# Neff *v.* Pennsylvania Railroad Company, Appellant.

| 202 | 371 |
| 26 SC | [1]368 |
| 202 | 371 |
| e 29 SC | [2]135 |
| 202 | 371 |
| f218 | 573 |
| 202 | 371 |
| 40SC[3] | 2 |

*Railroads—Bridges—Easement—Measure of damages.*

Where the owners of adjoining lands have so construed a deed that the owner of one of the tracts has for seventy years used a lane over the land of the second owner, the owner of the first tract may recover damages from a railroad company for removing an overhead bridge which the company had erected fifty years before to span a cut in the lane made necessary in the construction of the railroad.

In such a case the private way was appurtenant to the first owner of the land, and when the railroad company took possession of it by removing the bridge, it was responsible to him for the damages which he sustained. The measure of damages is the difference between the market value of the land before and after the taking of the lane.

*Appeals—New trial—Act of May 20, 1891, P. L. 101.*

The power to grant a new trial conferred on the appellate court by the act of May 20, 1891, is exceptional in character and only to be exercised in very clear cases of wrong or injustice which the court below should have remedied.

*Easement—Right of way—Evidence.*

In an action to recover damages for interference with a right of way where the statement avers the establishing of the road and the adverse user of it for the prescriptive period, it is not error to admit in evidence a deed showing a reservation in the plaintiff's predecessor in title of the right of way.

POTTER, J., dissents.

Argued April 21, 1902.　Appeal, No. 238, Jan. T., 1901, by defendant, from judgment of C. P. Huntingdon Co., Sept. T., 1900, No. 23, on verdict for plaintiff in case of R. K. Neff v. Pennsylvania Railroad Company. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.　Affirmed.

Trespass to recover damages for injuries to land caused by the removal of a bridge over a private lane.　Before BAILEY, P. J.

At the trial counsel for plaintiff proposed to show by B. K. Neff, that his father, Jacob Neff, Jr., and his grandfather, Jacob Neff, Sr., lived on the farm known as the Benjamin K. Neff farm, adjoining the Gilbert Neff farm on the west; that his grandfather owning both tracts of land, the Gilbert Neff farm and the B. K. Neff farm, established a private road for the use of the farms out to the public road leading from Alexandria to Petersburg; that after the farm known as the Gilbert Neff farm was sold by his grandfather to one Frederick Mennert, his grandfather and his father and himself have continued to use that private road openly, notoriously and adversely, from the time of its establishment up until it was rendered useless by the tearing down of the bridge by the defendant company; we propose further to show by the witness upon the stand that when the defendant company went through the Gilbert Neff farm, established their way and laid their tracks, that by agreement with the plaintiff, they erected on the line of this private road to carry it, and render it serviceable, a bridge over their tracks; that from that time until the destruction of that bridge on May 17, 1900, the railroad company continued to keep that bridge in repair and built new approaches at the same site; we propose further to show by the witness upon the stand, that when the bridge carrying the road from Petersburg to Alexandria was impassable over the tracks of the Pennsylvania Railroad, that employees and agents of the Pennsylvania Railroad came to the plaintiff and asked permission to have the public travel over the bridge which they had built for him on his private way, thus recognizing his right; this for the purpose of showing the establishment of the right of way and laying the ground for consequential damages for its destruction by the defendant company; and that this private way was used for a

period of more than twenty-one years prior to the destruction of the bridge.

Mr. Furst: Defendant's counsel object to the offer:

1. Because it is contradictory; that upon the facts as stated in the offer no prescriptive title to this bridge can be acquired by adverse possession as against the defendant railroad company, as according to the offer the bridge was built by them for some purpose of travel.

2. The declaration states the plaintiff's claim in this case is a title to the private way by adverse possession; under the offer no adverse possession is shown as to this bridge.

3. That the Pennsylvania Railroad Company having acquired title to the fee of the land on both sides of the bridge, as already shown in evidence, there was no obligation in law, neither under the general act of 1849, nor of the charter of the Pennsylvania Railroad Company, to maintain a bridge in the right of way for the purpose of affording a private road to a landowner who did not adjoin the right of way of the railroad company.

4. That if plaintiff's claim in this case be for the destruction of the bridge, as appears by the pleadings, he must show a title to the bridge, otherwise it is damnum absque injuria.

5. The allegation of employees of the company having made verbal agreements or declarations are not evidence to affect the defendant, as it is not shown that they were made by such persons as had authority to bind the Pennsylvania Railroad, the defendant.

6. The declarations even of a contractor to build a bridge could not be offered in evidence to affect the principal.

Therefore, the offer is objected to for these reasons, as being incompetent, irrelevant and inadmissible.

The Court: Objection overruled. Testimony admitted. Bill of exceptions sealed for defendant. [1]

Mr. Bailey: We propose to show by the witness, B. K. Neff, that he had a conversation with Mr. Carns, the agent and contractor of the Pennsylvania Railroad; that Mr. Carns agreed to build a bridge for the plaintiff when he put the tracks of the Pennsylvania Railroad through the Gilbert Neff farm on the land of plaintiff originally, so as to preserve for him the use of the road, and that his way would not be obstructed by the railroad; this to be followed by proof that the Pennsylvania Rail-

road has kept the bridge in repair from that time to the time of its destruction and erected the bridge.

Mr. Furst: This is objected to, because Carns is not shown to be a contractor of the defendant company with authority to bind the company by any verbal arrangement that he might make; that no contractual relation is shown between the railroad company, defendant, and Mr. Carns; that the evidence is inadmissible and incompetent to affect the rights of the defendant.

The Court: Objection overruled.    Testimony admitted.    Bill of exceptions sealed for defendant. [2]

Mr. Bailey: We have heretofore offered the deed of Jacob Neff and wife to Frederick Mennert for the purpose of showing title.    We now desire to offer it for the purpose of showing a reservation of the ground of this roadway.

Mr. Furst: We object to this offer:

1. Because the plaintiff, in the statement filed, has claimed to recover simply upon an adverse possession, an adverse title to the property, and this offer is now to show an entirely different title, which contradicts the pleadings in the case.

2. If the plaintiff has title by grant he cannot have title by adverse possession, and therefore, the offer is incompetent and irrelevant.

3. That this grant only continued during the lifetime of Jacob Neff.

The Court: Objection overruled.    Evidence admitted.    Bill of exceptions sealed for defendant. [3]

The court charged in part as follows:

[It appears that one Jacob Neff, Sr., prior to 1830, was the owner of this land (the land which now constitutes the Gilbert Neff as well as the B. K. Neff farms); that on January 5, 1830, he divided this large body of land, selling what is now the Gilbert Neff farm to one Frederick Mennert, and, in the deed to Mennert, he expressly reserved the use of this way from the B. K. Neff farm to the public highway.    The language of the reservation as it appeared in the deed to Mennert is as follows:

"Also excepting and reserving the privilege of keeping open the lane which at present runs through the before described tract, piece or parcel of land to the great road, to be kept open of the breadth of fifteen feet forever, for the use and conven-

ience of whomsoever may from time to time be the owner or
occupier of the river tract of land now in the possession of Ja-
cob Neff, son of Jacob Neff, the elder."

On the same day, that is January 5, 1830, he conveyed the
B. K. Neff farm, designated in this reservation as the " river
farm " to his son Jacob Neff, Jr.    When Mennert conveyed
the Gilbert Neff farm to one Benjamin Brubaker, he conveyed
it expressly subject to the reservation of the private way through
it, the same as mentioned in the deed from Jacob Neff, Sr., to
him.    The deed that Jacob Neff, Sr., made to Frederick Men-
nert was placed on record in the recorder's office in this county,
January 7, 1830, just two days after it was executed.    The deed
from Mennert to Brubaker has also been recorded.

The defendant company, in or about the year 1850, con-
structed its line of road through the Gilbert Neff farm.    At
that time it was servient to this private road or way.    Accord-
ing to the reservation in the deed and from some evidence, it
appears that the road had been for many years prior to that
time used and occupied by the owner or occupant of the B. K.
Neff farm.    The line of the defendant company's road, as laid
out crossed the private road, which was then used by B. K.
Neff as an outlet from his farm and had been so used for sev-
eral years prior.] [4]

[While one Karns was in the act of constructing for the de-
fendant company its railroad through the Gilbert Neff farm, B.
K. Neff testifies that he inquired of Karns what was to become
of the private way.    He seemed to be anxious for its protection
because at the point where the tracks of the railroad company
had been located, across this private road or way, a deep cut, of
about eleven feet, was required; and, therefore, he inquired of
Mr. Karns, the contractor, what was to become of the private
road.    He was assured by Karns, according to his testimony,
that the railroad company would build an overhead bridge as
soon as they could across the railroad tracks to supply him with
a way out to the public highway.

While Karns may probably not have had express authority
from the railroad company to promise that such bridge would
be built, it is nevertheless true that the bridge was built by the
railroad company just about the time that Karns promised Mr.
Neff that it would be built, which would seem to be at least

some evidence of ratification by the railroad company of the promise which Mr. Karns made Mr. Neff. After the bridge was constructed, Mr. Neff continued the use of his private way as before, except that when he came to the railroad he crossed this bridge which was built upon the line of the private way as it had been theretofore used. He could not well or conveniently have crossed the railroad tracks at grade at that point, on account of the deep cut to which I have already referred. The Pennsylvania Railroad Company kept this bridge in repair and replaced it with new bridges at two different times.] [5]

[The reservation of this way over the Gilbert Neff farm by Jacob Neff, the previous owner of it, in his deed to Mennert, which has been duly recorded, was notice to all the successors of Mennert in this title that it was incumbered by this road. The reservation stood right in the line of their title and all of them took the title subject to that right of way over the Gilbert Neff farm.] [6]

[There has been some evidence that the Pennsylvania Railroad Company now own the land on both sides of the railroad where this roadway crosses it. We do not see that the rights of the Pennsylvania Railroad Company, because it owns the land, are higher than any of its predecessors, and, if Mennert, who at the time of the conveyance to him was the owner of this same land had not the right to destroy the road, surely the Pennsylvania Railroad Company has not the right to destroy it just because it now owns the land on both sides. It was not necessary to preserve the rights of the owners of the B. K. Neff farm that it should be mentioned in the several subsequent deeds for the Gilbert Neff farm, neither was it necessary to specially mention it in the conveyances of the B. K. Neff farm. The reservation in the deed of Jacob Neff to Mennert for the Gilbert Neff farm became an appurtenant to the B. K. Neff farm and passed with the subsequent conveyances of that farm without any special reference. Therefore B. K. Neff, this plaintiff, had the right of the private way through the Gilbert Neff farm, as reserved in this deed, and may recover in this action whatever damages he may have suffered by reason of its destruction by the defendant company.] [7]

[His loss may be measured by the depreciation of the market value of his farm by reason of its being deprived of this pri-

vate road.    It was an appurtenant to his farm ; that is, gentlemen, it belonged to that farm.    In other words, gentlemen, what do you find to be the difference in the market value of the plaintiff's farm immediately before the destruction of this overhead bridge and immediately after, if you find there was any difference in its value.    If the market value of the farm was not depreciated by the destruction of the continuity of this private road, your verdict should be for the defendant, because if his farm was not affected by the destruction of this road, he suffered no damage.    You will remember the testimony of the witnesses on the question of damages.]  [8]

Verdict and judgment for plaintiff for $2,000.    Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions ;  (4–8) above instructions, quoting them.

*J. D. Dorris* and *A. O. Furst*, with them *William Dorris*, for appellant.—The admissions of an agent are binding upon the principal only when they are connected with the acts performed by him in his capacity as agent : Erie & Wyoming Valley R. R. Co. v. Smith, 125 Pa. 259 ; Shaw v. Susquehanna Boom Co., 125 Pa. 324.

Plaintiff's statement and amended statement gave the defendant no indication of his claim of right to this private way over his neighbor's farm by grant.

The rule by which the measure of damages was ascertained in this case, viz: the difference in the value of property immediately before and after the injury, which rule was established in the case of The Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 410, decided by this court in 1821, is a rule peculiarly applicable, and only so, to a case of direct taking or direct physical injury.    We submit it has never been applied to a case of consequential damages or alleged consequential damages : Philadelphia Ball Club v. Philadelphia, 192 Pa. 632 ; Robb v. Carnegie, 145 Pa. 342 ; McGettigan v. Potts, 149 Pa. 155.

The reservation contains no words of inheritance, and the only word used is the use of the word " forever."    In general it has been held that the word " forever " is a word of inheritance in a will but not in a deed.

The appellate courts have power to review the discretionary act of the trial court in refusing to grant a new trial because of the alleged inadequacy of the verdict, but this power is exceptional in character and only to be exercised in very clear cases of wrong or injustice which the court below should have remedied: Woodward v. Consolidated Traction Co., 17 Pa. Superior ·Ct. 576; Smith v. Times Publishing Co., 178 Pa. 481; Schenkel v. Pittsburg, etc., Traction Co., 194 Pa. 182.

*Thomas F. Bailey* and *H. H. Waite*, for appellee.—Agency may be shown by proof of the acts of the agent as such and that they were recognized by his principal: Woodwell v. Brown, 44 Pa. 121; Brig Odorilla v. Baizley, 128 Pa. 283.

Plaintiff was permitted to show any title by which he might establish this private road, whether it be by adverse user, by grant or by exception or reservation: Magill v. Swearingen, 10 Pa. 497.

The rule that the language making an exception or reservation in a deed is to be construed most favorably to the grantee, only applies where the language is doubtful and does not obtain where the language is sufficiently clear to define the character and extent of the exception or reservation: Richardson v. Clements, 89 Pa. 503; Kister v. Reeser, 98 Pa. 5; Hagerty v. Lee, 54 N. J. L. 580; 25 Atl. Repr. 319.

In a proceeding against a railroad company to recover damages for the taking of the whole of an alleyway, the property owner is entitled to recover the full amount of the difference in the value of the property before and after taking of the alley: Philips v. Phila. & Reading Terminal R. R. Co., 184 Pa. 537.

The power of the Supreme Court to grant a new trial under the Act of May 20, 1891, P. L. 101, is exceptional in character and only to be exercised in very clear cases of wrong or injustice, which the court below should have remedied: Schenkel v. Pittsburg, etc., Traction Co., 194 Pa. 182.

OPINION BY MR. JUSTICE MESTREZAT, May 12, 1902:

In the view we take of this case, the declarations of contractor Carns become immaterial to the issue between the parties, and although the testimony admitted to show his statement relative

to the construction of the bridge should have been excluded, yet it did the defendant no harm and its admission is therefore not reversible error.    For more than seventy years, the owners of the servient property, including the defendant company, had by their acts construed the clause in the elder Neff's deed as giving the owner of the dominant property " the privilege of keeping open the lane to the great road for the use and convenience of whomsoever may from time to time be the owner or occupier of the river tract of land."    Conceding it to be true, as claimed by appellant's counsel, that the bridge was erected by the company as required by its charter to connect the two pieces of land and that it was used for that purpose, yet it is an undisputed fact that the bridge was constructed in the line, and became a part, of the lane, and was thereafter used by the owner of the B. K. Neff or river tract of land precisely as the ground for which the bridge was substituted had been used. The defendant company made no objection to this use of the lane, and for fifty years acquiesced in the claim of the right to a permanent easement over it by the owners of the B. K. Neff tract of land.    The construction, therefore, given by the interested parties to the clause in Jacob Neff's deed giving the right to the use of the lane is apparent and shows conclusively that a permanent easement was intended to be granted to the " owners and occupiers" of the tract of land now owned by the plaintiff. The practical construction thus given the clause of the deed in question not being inconsistent with its terms will be adopted so as to give effect to the design and intention of the parties.

The third assignment complains that the statement is not sufficiently comprehensive to admit the testimony offered in support of its averments.    The establishing of the road and the adverse user of it for the prescriptive period are averred in the statement and any competent and relative testimony in support of both or either of these averments was admissible.    The statement alleges that Jacob Neff, senior, had established the private way many years prior to the construction of the defendant's road and the testimony, the admission of which is complained of in this assignment, tended to establish the fact.

The plaintiff's easement was not interfered with until the defendant removed the bridge in 1900.    The construction of the defendant's road in 1850 did not deprive the plaintiff of

the use of the lane, and in no way impaired his enjoyment of
it. The erection of the bridge in 1851 to span the cut made
necessary in the construction of the railroad continued to give
the plaintiff and his predecessors in title to the river tract of
land the use and enjoyment of the private way as unimpaired
and unobstructed as they hitherto had. No act therefore of the
defendant company had invaded the rights of the plaintiff to
the easement, and no injury had been done him by depriving
him of the use of the lane until the company destroyed his way
by the removal of the bridge. Its liability was then fixed and
the plaintiff's right of action accrued.

The private way was appurtenant to the plaintiff's land, and
when the defendant company took possession of it by removing
the bridge it was responsible to the plaintiff for the damages he
sustained: Philadelphia, etc., R. R. Co. v. Williams, 54 Pa.
103. " When the defendant closed up this alley and destroyed
this easement," says the court below (approved by this court)
in Philips v. Philadelphia & Reading Terminal R. R. Co., 184
Pa. 538, " it did not enter upon the land of the plaintiff, but it
actually destroyed something that may or may not have been
of pecuniary value to his property, and in which his property
had a right, which is called an easement; that is, the right of
passing to and fro to Division street." This action is essen-
tially a proceeding for the assessment of damages for land taken
under the right of eminent domain. The measure of damages
adopted by the learned trial judge was therefore entirely cor-
rect. The effect upon the plaintiff's farm to which the way
was appurtenant was the injury he sustained. If the market
value of the tract of land was the same before and after the
entry and taking of the lane by the defendant company, then
the owner of the premises suffered nothing and was not injured.
To the extent, however, to which the market value of the farm
was depreciated by being deprived of the use of the lane, the
plaintiff was injured and that was the measure of his damages.
" Under the charge of the learned court below," says this court
in Philips v. Railroad Co., supra, " the plaintiff was allowed to
recover the full amount of the difference in value of his prop-
erty before and after the taking of his alleyway leading to Di-
vision street. This easement was what was taken, and to the

extent to which his property was injured in consequence of the taking, he was permitted to recover."

The last assignment alleges error in the court below in not setting aside the verdict and granting a new trial. We discover nothing in the case, however, that would warrant us in exercising the power conferred by the act of May 20, 1891, and in granting a new trial. This power, as said by our Brother MITCHELL, in Schenkel v. Pittsburg, etc., Traction Co., 194 Pa. 182, is exceptional in character and only to be exercised in very clear cases of wrong or injustice which the court below should have remedied.

The judgment is affirmed.

POTTER, J., dissents.