*In re* PETITION OF DILLMAN.

1. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—APPEAL AND ERROR.
   In determining whether there has been error in rulings by commissioners, in condemnation proceedings, nature of such proceedings must be kept in mind.

2. SAME—CONDEMNATION PROCEEDINGS—INQUISITORIAL IN CHARACTER.
   While condemnation proceedings are subject to judicial supervision and review, strictly speaking, they are not judicial proceedings, but instead, are inquisitorial in character.

3. SAME—COMMISSIONERS JUDGES OF LAW AND FACTS.
   In condemnation proceedings, commissioners are judges of both law and facts, they are vested with large discretion in matter of taking testimony and in general control of proceedings, and they are not bound by strict rules of evidence and technicalities of trial in *nisi prius* courts.

4. SAME—EVIDENCE—PROOF OF SALE PRICE—DAMAGES.

In condemnation proceedings, general rule that proof of sales price is competent testimony as to value is subject to proof of circumstances or varying conditions which have bearing on weight of testimony and possibly on its admissibility.

5. SAME—APPEAL AND ERROR—REJECTION OF TESTIMONY AS TO SALES PRICE—MEASURE OF DAMAGES.

Commissioners' erroneous rejection of testimony as to sales price of parcels of land in vicinity, offered as evidence of value of land taken in condemnation proceedings, *held*, not to have resulted in fixing wrong measure of damages as to any particular parcel of land.

6. SAME—DELAY—CONFIRMATION OF AWARDS.

On appeal from order confirming awards, where condemnation proceedings had been in progress for more than three and one-half years, importance of bringing proceedings to conclusion, *held*, to be potent reason for declining to set aside awards, in absence of convincing showing of prejudicial error.

7. SAME—REFUSAL TO TAKE FURTHER TESTIMONY.

Commissioners' refusal to take further testimony after rebuttal testimony in behalf of property owners had been given, *held*, not error of sufficient gravity to justify vacating awards.

8. SAME—ARGUMENT OF COUNSEL.

Argument of defendants' counsel *held*, not prejudicial, where it does not appear that commissioners were improperly influenced thereby or that unjust consequences resulted, and especially where hearing was very informal, and counsel on each side were allowed greater latitude than is commendable in practice.

9. SAME—TRIVIAL CIRCUMSTANCES NOT PREJUDICIAL.

That one of defendants gave one of commissioners dahlia bulb while proceedings were pending, or that during recess time cookies from home of one of defendants were handed to one of commissioners and subsequently served to those in attendance by one of attorneys for plaintiff, *held*, trivial circumstances which did not result in prejudice.

10. SAME—EXTENT OF INTERROGATION OF COMMISSIONERS IN REGARD TO METHOD OF ASSESSING DAMAGES.

On hearing on confirmation of awards, probate judge properly refused to allow commissioners to be interrogated in detail

as to methods used and elements considered in assessing damages as to each of numerous parcels of land involved, since this would have been rehearing of case, which practice is not permissible.

11. SAME—EXAMINATION OF COMMISSIONERS.

Where probate judge permitted examination of commissioners as to whether their determination was based on contract price or cash market value of property, and it is not contended that damages assessed are not within range of testimony given, examination was not unduly restricted.

12. SAME—CONSENT OF PARTIES TO COMMISSIONERS' VISITING ANOTHER CITY.

Holding of probate judge that commissioners' visit to another city for purpose of investigating evidence and better enabling them to determine its weight and bearing upon claim that suburban transportation increased value of land involved was with consent of counsel for both parties, *held*, justified by record.

13. SAME—VIOLATION OF RESTRICTIONS—NOMINAL DAMAGES.

Violation of restrictions do not necessarily result in nominal damages only.

14. SAME—EASEMENTS APPURTENANT TO LAND.

Restrictions which are reciprocal and in nature of easements are appurtenant to and run with land.

15. SAME—MEASURE OF DAMAGES FOR TAKING OF EASEMENT APPURTENANT TO LAND.

When easement appurtenant to land is taken, measure of damages is depreciation in market value of dominant tenement, and this is shown by difference in fair market value of property before and after taking.

16. SAME—COMMISSIONERS MAY EXERCISE THEIR JUDGMENT IN DETERMINING DAMAGES.

In determining damages to various parcels of property by locating railroad right of way through high-class subdivisions highly restricted, commissioners are entitled to exercise their judgment in making reasonable determination, after viewing property affected, from said observation, considered in connection with other testimony as to which properties, and to what extent, damages had resulted from violation of restrictions.

17. SAME—DAMAGES.

Claim of reversible error on ground that, as to particular parcels, commissioners assessed damages on sole ground that property owner's view over premises in which he had no easement was interfered with, *held*, not sustained by record.

18. SAME—BENEFITS FROM SUBURBAN TRANSPORTATION SERVICE.

Commissioners' determination that benefits derived from suburban transportation service did not equal damages to which some of parcels of land were subjected by location of railroad right of way through subdivision, held, sustained by testimony.

19. SAME—WEIGHT OF TESTIMONY BY EXPERT WITNESSES—DAMAGES.

In awarding damages for destruction of restrictions by locating railroad right of way through high-class subdivision, commissioners were at liberty to give such weight and credence as in their judgment seemed proper to testimony of expert witnesses as to benefits derived from suburban transportation service, and they were not obliged to accept it in full; nor was greater number of witnesses on one side or other controlling.

20. SAME—DAMAGES—APPEAL AND ERROR—CERTIORARI.

In reviewing order confirming award of damages in condemnation proceedings, which is review in nature of certiorari, Supreme Court should not substitute its judgment for that of commissioners, even though, if sitting as commissioners in original hearing, it might not have agreed with them in every detail.

Appeal from Oakland probate court; McGaffey (Dan A.), J. Submitted April 21, 1933. (Docket No. 79, Calendar No. 36,726.) Decided June 5, 1933.

Petition by Grover C. Dillman, State highway commissioner, for condemnation of lands of Thomas Cobb and others for a certain highway project. Plaintiff and Grand Trunk Western Railroad Company filed objections to confirmation of awards. From order confirming awards made as to certain parcels, plaintiff and railroad company appeal. Affirmed.

*Patrick H. O'Brien,* Attorney General, *F. J. Kolodziejski* and *E. B. Howarth,* Assistants Attorney General, for appellant State highway commissioner.

*H. Victor Spike* and *John J. Gafill,* for appellant Grand Trunk Western Railroad Company.

*Atkinson, Ortman & Shock (Frank W. Atkinson,* of counsel), for defendants.

North, J.   These proceedings were instituted for the State by the highway commissioner to secure condemnation of certain lands in Oakland county, under Act No. 340, Pub. Acts 1927 (1 Comp. Laws 1929, § 4454 *et seq.*).   They are incident to the widening of Woodward avenue and the relocation of the right of way of the Grand Trunk railroad, a matter which has previously been before this court.   See *Fitzsimons & Galvin, Inc.,* v. *Rogers,* 243 Mich. 649; *Johnstone* v. *Railway Co.,* 245 Mich. 65 (67 A. L. R. 373); *In re Dillman,* 256 Mich. 654.   The proceedings in the instant case do not involve the physical taking of property, but instead only damages caused by violation of restrictions or resulting from smoke, smell, dust, vibration, noise, obstruction of view, fire hazard, impairment of accessibility, or change of grade.   The properties are located in the following restricted subdivisions:   Trowbridge Farms, Bloomfield Estates, Bloomfield Manor, Birmingham Estates, and East Maple Gardens.   An award of damages was sought for 295 parcels.   As to 166 no damages were assessed, but as to the remaining 129 lots the commissioners awarded damages totaling $269,506.50.   By virtue of the provisions in Act No. 340, Pub. Acts 1927 (1 Comp. Laws 1929, § 4454 *et seq.*), the Grand Trunk Western Railroad Company participated in these condemnation proceedings.

Both the State and the railroad company, claiming that the damages are excessive and were improperly awarded, have appealed from the order of confirmation by the probate court.

Prior to the widening of Woodward avenue, the Grand Trunk right of way in this locality was adjacent or nearly adjacent to the highway. The newly-condemned right of way relocates the railroad from two-fifths to three-fifths of a mile or thereabouts northeasterly of the old right of way. The railroad has been changed from a single track to a double track, provision being thus made for suburban service not formerly given by the railroad and incident to which there are 18 trains daily. It may be inferred from the record that a four-track system is ultimately contemplated. The subdivisions involved are rather highly restricted, confined exclusively to residential use. The character of the property to some extent is apparent from the following:

*Trowbridge Farms* subdivision, consists of 57 lots varying in size from one and a half to upwards of six acres, was platted in 1916. It was traversed by the old right of way and also by the relocated railroad. The latter at some points is located in a cut more than 50 feet deep. On some portions of this subdivision there is a growth of timber. The building restrictions provide that the homes erected thereon shall cost a minimum of $15,000. *Bloomfield Estates* subdivision consists of 137 lots varying in size from one acre to five acres. Here the restrictions call for houses costing not less than $3,500, $4,000, $4,500, and $5,000, depending upon location; and a setback of from 30 to 100 feet is provided. *Bloomfield Manor* contains 39 lots, the average size being seven-eighths of an acre. Restrictions call for

houses costing a minimum varying from $3,500 to $7,500, with a setback of 100 feet. In *Birmingham Estates* there are 210 lots each about 80 x 140 feet, and a minimum cost for dwellings of $7,500 is provided in the restrictions. The *East Maple Gardens* subdivision is composed of 99 lots approximately 75 x 140 feet each. The restrictions require a minimum cost of dwellings from $4,000 to $6,000.

On the 542 lots comprising these subdivisions, 107 dwellings have been erected. The dwellings and other properties as to which damages were awarded are located at varying distances from the new right of way. In some locations the newly-located railroad tracks are in a deep cut, in others practically at grade, and in still others on a fill. Between some of the properties here involved and the new right of way there is standing timber which at least to some extent acts as a screen and as a sound break. Some of the properties are located as far or farther from the new right of way than from the former right of way of the railroad. But those centrally located parcels, as to which substantial damages were awarded, face in an easterly direction, and the railroad as relocated is in front of these dwellings instead of at the rear. Some parcels, by reason of streets being closed by the new right of way are less accessible from main thoroughfares. It would be quite impossible, as well as unprofitable, to attempt to outline herein the details of the changed conditions as affecting each parcel of land.

Appellants assert prejudicial error both in the hearing before the commissioners and in rulings and determinations of the probate judge upon the hearing of appellees' petitions for confirmation. As to alleged errors by the commissioners, appellants present the following questions:

"Should the awards be set aside where the commissioners refused to allow the appellants to show sales of the property involved, or listings and offers to sell?

"Did the commissioners err in excluding rebuttal evidence to testimony of appellees' witnesses, Born, Hoffman, Pohlmeyer, Thomas, Williams, and Bell?

"Was the argument of counsel for appellees so prejudicial to the interests of the appellants that the awards should be set aside?

"Was it misconduct for a commissioner, during progress of the hearing, to visit an appellee at his home (the appellee being a stranger to him) without the presence of the other commissioners or appellants, accept gifts from such appellee?"

In determining whether there has been error in rulings by the commissioners, the nature of proceedings of this character must be borne in mind. While such proceedings are subject to judicial supervision and review, strictly speaking, they are not judicial proceedings. Instead, they are inquisitorial in character. The commissioners are judges of both the law and the facts, and they are vested with a large discretion in the matter of taking testimony and in the general control of the proceedings. They are not bound by "the strict rules of evidence and technicalities of trial in *nisi prius* courts." *Chicago, D. & C. G. T. J. R. Co.* v. *Jacobs,* 225 Mich. 677. See, also, *Toledo, A. A. & G. T. R. Co.* v. *Dunlap,* 47 Mich. 456; *In re Widening Harper Avenue,* 237 Mich. 684, and *In re State Highway Commissioner,* 249 Mich. 530.

The commissioners' rulings against offers to show sales of property as bearing upon the question of value violated the rules governing the admissibility of testimony applicable to court procedure. The general rule is elementary that proof of a sales

price is competent testimony of value. *Davis* v. *Zimmerman*, 40 Mich. 24; *Harmon* v. *Walker*, 131 Mich. 540. However, the general rule is subject to proof of circumstances or varying conditions which have a bearing upon the weight of the testimony and possibly upon its admissibility. 2 Nichols on Eminent Domain, p. 1191. Evidently the commissioners had this phase of the rule in mind and were of the opinion that appellants should show a similarity of circumstances which justified receipt of the testimony as to sales prices. Obviously, they were desirous of hearing competent testimony of the circumstances under which the sale was made before taking into the record testimony of the sales price. This attitude was clearly disclosed upon the redirect examination by appellants of their witness Leland J. Bunyon, who as agent had negotiated the sale of a parcel to a Mr. Moore. Objection was urged to the following question: "What did the property sell for to Mr. Moore?" Thereupon the commission sustained the objection on the ground that "the proper foundation has not been laid," and it was pointed out that the witness was not competent to testify to the details which prompted the sale by one of the parties and the purchase by the other. In connection with the examination of this witness, the commissioner stated to counsel that sales "are mighty good evidence" of value. Notwithstanding the ruling of the commission was erroneous, we are not satisfied from the record that it resulted in fixing a wrong measure of damage as to any particular parcel of land.

"The jury (commissioners), in proceedings to condemn lands, are not bound by the testimony submitted to them, but are also expected to use their own judgment and knowledge from a view of the premises and from their own experience as free-

holders." *Toledo, A. A. & G. T. R. Co.* v. *Dunlap* (syllabus), *supra.*

These proceedings had been in progress for more than two years prior to the hearing on the application for confirmation. It is now more than three and a half years since the commissioners were appointed. The importance of bringing proceedings of this character to a conclusion rather than to perpetuate them indefinitely is a somewhat potent reason for declining to set aside a determination in the absence of a convincing showing of prejudicial error. In the instant case the delay was such that the probate judge, on the confirmation hearing, with much justification, was led to say to one of appellants' counsel:

"Now, all you are doing in here is just trying to delay this so long that the property owners will die before they have the benefit of the award. That is the way it looks to me."

On the hearing before the commissioners the property owners (appellees) took the initiative in offering proof of damages. The State and railroad company followed with other testimony, and thereafter rebuttal testimony was taken in behalf of the property owners. At its conclusion appellants sought an adjournment in order that they might offer further testimony said to be in reply to the property owners' rebuttal. The witnesses were not in court, but after some considerable colloquy counsel for appellants stated:

"We can finish within an hour. If it is a question they don't want to adjourn, we will try to get a hold of the witnesses in the next half hour or hour."

Appellants claim they should have been allowed to take further testimony because on rebuttal there

was a showing made for the first time of damage from vibration to property located 900 feet or more from the railroad right of way, and also testimony offered for the first time as to specific damage from smoke entering premises. Incident to ruling that further testimony would not be taken, the commission announced that as to the testimony of damage from vibration at points more than 500 feet (which had already been covered in the record) from the right of way "since you are not claiming that, all we can do is consider that testimony a nullity." This was in response to the statement of counsel for the property owners that they did not claim any damages from vibration as to properties located more than 500 feet from the railroad. From the outset it had been the claim of the property owners that the various properties, many of them if not all, had been damaged by smoke, dust, noise, etc. The issue of damage from smoke was not first brought into the record by appellees' rebuttal testimony. This phase of the case might well have been covered when appellants were offering testimony in reply to appellees' testimony. The refusal of the commissioners to take further testimony was not an error of sufficient gravity to justify vacating the awards.

Notwithstanding on this appeal objection is seriously stressed to the argument of appellee's counsel made before the commissioners as having been prejudicial, there seems to have been no serious objection made to the argument at the time. As perhaps is too generally the case, these proceedings both before the commissioners' and on the hearing on confirmation before the probate judge were conducted with almost unlimited informality, and counsel on each side of the case went to great lengths in an obvious attempt to gain advantage for their re-

spective clients. Such attempts were not materially more pronounced on one side of the case than on the other. We forego quotations from the record which would disclose much that is not commendable in the practice. Notwithstanding the latitude taken by counsel, we do not find from this record that the commissioners were improperly influenced thereby or that any unjust consequences resulted. Instead, we think the record fairly discloses that the commissioners understood the duties that devolved upon them in this case, and exercised their best judgment in arriving at an honest determination of the damages to be assessed.

We are not impressed with appellants' claim of prejudice based upon the charge that one of the property owners gave one of the commissioners a dahlia bulb while these proceedings were pending, or that during recess time at one of the hearings cookies which came from the home of one of the property owners were handed to one of the commissioners and subsequently served to those in attendance by one of the attorneys for appellants. This was simply one of the trivial circumstances which arose from the fact that during this long-drawn-out hearing it became the custom for various parties, including attorneys for appellants, to provide various items of refreshment. Upon the confirmation hearing, and touching this phase of appellants' complaint, it was testified:

"Why, there was so much apples and cookies and everything, that I think everybody did their part. I don't think there was anybody there hardly that did not bring in apples, or cookies or candy or cigarettes."

In support of their appeal, appellants claim error on the confirmation hearing before the probate

judge by the refusal of the court to permit appellants to examine the commissioners in detail as to the manner in which they arrived at the assessment of damages to the various parcels of property. It quite conclusively appears from the record that, in summoning the commissioners as witnesses on the confirmation hearing, appellants proposed to interrogate them in detail as to the methods used and the elements considered in assessing damages as to each of the numerous parcels of land involved in these proceedings. Obviously this would have been a rehearing of the case. Such practice is not permissible, and the probate judge was right in so ruling. Appellants in this particular relied largely upon *In re State Highway Commissioner*, 255 Mich. 50. The probate judge in ruling upon the question raised announced to appellants:

"Yes, you can examine the commissioners on whether their awards were cash or contract and whether they kept within the range of the testimony, the highest and lowest testimony, according to what the law requires them to do, and that is all."

There was some controversy as to whether or not the commissioners in assessing damages based determination upon the contract price of property or the cash market value. The probate judge permitted appellants to examine the commissioners, and the testimony discloses that their determination was based upon cash value, not contract prices. Neither in the probate court nor on this appeal have appellants pointed out that the damages assessed by the commissioners were not within the range of testimony given. Appellants were permitted to examine the commissioners on this phase of the awards. Examination of these witnesses was not unduly restricted.

Appellants also urge that confirmation should have been denied because the commissioners, after the testimony before them was concluded and before making their awards, visited Chicago and suburbs for the purpose of investigating the evidence and better enabling them to determine as to its weight and bearing upon appellants' claim that suburban transportation increased the value of the lands here involved. At the conclusion of the proofs, there was lengthy colloquy and discussion between the commissioners and counsel for the respective parties as to the propriety of the commissioners making such a trip in order that they might better be able to understand and pass upon the testimony of the expert witnesses who had testified as to the effect of suburban transportation upon the value of lands in the vicinity of Chicago. Appellees' counsel took the position that there was no objection to such a trip by the commissioners, providing appellants' counsel would waive any right to claim error in consequence thereof. The question was repeatedly put to appellants' counsel as to whether they would waive the claim of such possible error. There was much equivocation. Finally, counsel for the appellants said:

*(Mr. Gafill)* "If the commission are going there for the purpose of looking over those streets and those homes that are in evidence here, I haven't the slightest objection."

*(Mr. Howarth)* "I haven't any objection to your going over and looking over the properties that were put in evidence, but I want you to remember this at the same time that we wanted to put on certain evidence in surrebuttal that we were not allowed to. Now, what I believe you should study is the properties within the district that we have covered."

On the confirmation hearing, Mr. Gafill stated to the probate judge, in explanation of his having loaned the commissioners a brief case to use on this Chicago trip, the following:

"I want it clear about the brief case: In the first place, I consented to their going to Chicago and they wanted the brief case so as to have something to carry. Whether they asked for it, or I offered it to them, it doesn't make any difference."

Prior to going the commissioners conferred with the probate judge and their visit to Chicago was made with his knowledge and consent. We think the probate judge on the confirmation hearing was justified in his conclusion and holding that the Chicago trip by the commissioners was with the consent of the respective counsel. Appellants have no reason to complain.

Appellants present for our review the following question:

"Were awards based on false principles where the only evidence of damage is that arising from violation of restrictions and view over intervening lots, where the Supreme Court restricts the damages for violation of restrictions to nominal damage and claimant for damages has no easement of view over intervening lots and the intervening lots will be occupied with improvements?"

Our review of this record satisfies us that appellants' contention that these awards were based upon false principles cannot be sustained. Appellants' counsel are in error in assuming that damages for violation of restrictions necessarily result in nominal damages only. Restrictions such as are here involved are reciprocal and in the nature of easements. They are appurtenant to and run with the land.

"When an easement appurtenant to land is taken, the measure of damages is the depreciation in the market value of the dominant tenement. *Neff* v. *Railroad Co.,* 202 Pa. 371 (51 Atl. 1038). This is shown by the difference in the fair market value of the property before and after the taking." *Johnstone* v. *Railway Co., supra,* 86.

Even if all the other testimony is disregarded, the commissioners here had before them, by reason of viewing the premises, the details of the surroundings of these various properties in these restricted subdivisions, by inspection they obtained the most direct and reliable information as to the physical changes effected by the relocation of the right of way. They were entitled to exercise their judgment in making reasonable determination from such observation, considered in connection with the other testimony, as to which of these properties and to what extent damages had resulted from violation of the restrictions. Nor do we find reversible error in this record on the ground that as to any particular parcel the commissioners assessed damages on the sole ground that the property owners' view over premises in which he had no easement was interfered with. Surely the commissioners had a right to consider the present condition of the properties, and be mindful of the fact that, notwithstanding the owner of adjacent property might place improvements thereon, beyond all probability such improvements on property of this character would not entirely cut off or obstruct the view of a neighboring owner to whom damages were awarded. In stressing this phase of their appeal, appellants have detailed much of the testimony relating to the elements of damage to lots 21, 24, 27, and 28 of Bloomfield Estates. The record clearly discloses the untenability of appellants' position. There is testimony

tending to show that the aggregate value of these four parcels is $117,650; and testimony of appellees' witnesses tending to show total damage of $42,145. The total amount awarded by the commissioners as damage to these four parcels was $10,415.60. We will now refer more particularly to the testimony relating to lot 21. Three witnesses testified in behalf of appellees as to the damages to this parcel. One witness placed the value of this residential property at $41,000 before relocation of the railroad, and at $25,000 afterwards, leaving a depreciation of $16,000. Another of the witnesses placed the damages at $13,500, and the third witness at approximately $15,000. The commissioners awarded $3,786.13. Contrary to appellants' claim, these witnesses did not base their estimates of value solely upon violation of the restrictions and impairment of view. One of them included "The closing of all roads running east with the exception of Charing Cross," and explained, "Yes, but, as I said, the main consideration was the placing of the railroad diagonally through the subdivision and on a high bank which obstructs the view east and northeast." The distance from this lot 21 to the new right of way is about 1,100 feet. A portion of the intervening territory is a public park and practically all of the remainder is without buildings at the present time. Another of these witnesses testified that he took into consideration the element of noise in assessing damages.

"(Cross-examination by appellants' attorney):

"Q. And you considered that noise from trains operating upon the new right of way would be a greater personal inconvenience to the owner residing on the lot, than from trains operating upon the old right of way?

"A. I think it would.

"*Q.* And why do you think it would?

"*A.* Well, it is equipped with four tracks, so that I figured there would be more trains running there, and naturally more noise."

In front of this property the embankment on the new right of way is from 22 to 26 feet in height. One of these three witnesses, referring to the elements of damage, testified:

"The principal element in this case was the location of a four-track railroad through the very best portion of the subdivision, and not only shutting off the view to the east, but preventing homes being built on the land taken for the railroad, and throwing a bank of 25 feet or more as a solid wall obstructing the view and shutting off the view to the east of this railroad, and placing this property in what is known as a railroad environment, making it very undesirable property."

In the light of this testimony, it cannot be said that the award of these commissioners "was based on false principles" because the only evidence of damage was for a nominal amount resulting from the violation of the restrictions and because there was no other testimony of damage except interference with view over property in which the owner of lot 21 had no easement protecting his right of view.

The final question on this appeal is thus stated in one of appellants' briefs:

"Where appellant introduced 12 qualified witnesses who testified that property was benefited by the relocation with commuter service thereon, and appellee introduced no qualified testimony in contradiction thereof, and substantial damages were awarded by the commission, did the lower court err in confirming such awards?"

Throughout the hearing it was appellants' theory that, as to most of the properties involved, the benefits derived from inauguration of suburban service by the railroad and removal of the track from the old right of way exceeded the damage which otherwise would have resulted from the relocation. Expert testimony was taken at length in support of this theory. The commissioners specifically found:

"That the said property rights are benefited by reason of the removal of the tracks (from the old right of way) * * * and operation of the (railroad) * * * with commuter service, so-called, between Detroit and Pontiac. Said benefits were taken into consideration when determining the damages hereby awarded."

There was abundant testimony to sustain the determination of the commissioners that the benefits derived from the suburban service did not equal the damages to which some of the parcels of land were subjected. The fact that they made no award of damages as to many parcels fairly leads to the conclusion that as to such the commissioners may have found that the benefits equalled or exceeded the damages. The record sustains the determination of the commisssioners that, notwithstanding the benefits resulting from suburban service, the parcels of land incident to which damages were awarded were not benefited sufficiently to fully offset the damage resulting from the relocation of the right of way. As hereinbefore noted, the commissioners were not bound to consider the testimony given by witnesses in court only. The commissioners not only viewed the premises here involved, but they also inspected the premises in the suburbs of Chicago, to which appellants' experts referred in their testimony as to benefits derived from suburban service. The com-

missioners were at liberty to give such measure of weight and credence as in their judgment seemed proper to the testimony of these expert witnesses. They were not obligated to accept it in full. Nor was a greater number of witnesses on one side or the other controlling. In this review, in the nature of certiorari, this court should not substitute its judgment for that of the commissioners. This is true, even though, if sitting as commissioners in the original hearing, we might not have agreed with them in every detail. *In re Dillman, supra.* Careful consideration of this record, which presented other minor questions not herein discussed, discloses nothing that would justify setting aside the order of the probate judge confirming the awards of the commissioners.

The confirmation is affirmed, with costs to appellees.

McDONALD, C. J., and CLARK, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred. POTTER, J., did not sit.