STATE HIGHWAY COMMISSION v ABOOD

Docket No. 30226. Submitted December 12, 1977, at Lansing.—Decided May 24, 1978.

The Michigan State Highway Commission filed a petition and declaration of taking to obtain a parcel of land in Jackson County owned by Hannibal Abood and others. The petition alleged that a good faith written offer to purchase had been made and that just compensation was estimated at $14,500. The Jackson Circuit Court, Gordon W. Britten, J., found, pursuant to a jury verdict, that $14,500 represented just compensation. The defendants appeal, alleging that the court erred in not allowing evidence of the price defendants paid for the land, in not placing before the jury the question of whether the commission had made a good faith written offer to purchase, and in its instructions to the jury. *Held:*

1. While proof of the sales price is generally competent to show fair market value, the court did not err in excluding such evidence where the purchase price had no probative value because of changing market conditions and a lapse of five years from the time of purchase to the time of taking.

2. The defendants had ample opportunity to prove lack of good faith on the part of the commission. The fact that the commission did not accept and offer to the defendants the higher of two appraisal values does not in itself establish bad faith. The court's refusal to submit a special question to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur 2d, Eminent Domain §§ 267, 428.
Admissibility, in eminent domain proceedings, of evidence as to price paid for condemned real property on sale prior to the proceeding. 55 ALR2d 791.

[2] 27 Am Jur 2d, Eminent Domain §§ 387–389.
Eminent domain: what constitutes sufficient attempt to agree on purchase or compensation. 90 ALR2d 211.

[3, 4] 27 Am Jur 2d, Eminent Domain §§ 266, 407, 409.

[5] 76 Am Jur 2d, Trial, § 1175 *et seq.*

[6, 7] 27 Am Jur 2d, Eminent Domain §§ 418, 506.

[7] 27 Am Jur 2d, Eminent Domain § 272.

jury on this issue was not an abuse of discretion where in this case it would only have served to confuse the jury.

3. The trial court committed error in its instructions to the jury regarding the highest and best use for the land where the defendants claimed an intent to use the land for a gas station, which would require a rezoning, and the court stated that in order for the jury to consider the gas station use they must find a "real probability" and "real possibility" that on the date of taking a gas station permit would be issued. Such instructions placed too high a burden of proof on the defendants because the defendants were required to show a reasonable possibility only.

Reversed and remanded.

1. EMINENT DOMAIN—EVIDENCE—PURCHASE PRICE—FAIR MARKET VALUE—JUDGE'S DISCRETION.

Generally, proof of the sales price of property subject to condemnation is competent to show fair market value where the sale was voluntary, not too remote in time, and not otherwise shown to have no probative value; admission of such evidence is a matter largely within the discretion of the trial judge.

2. EMINENT DOMAIN—GOOD FAITH OFFER TO PURCHASE—STATUTES.

A good faith written offer to purchase property is required before condemnation proceedings may be instituted (MCL 213.366[1]; MSA 8.261[6][1]).

3. EMINENT DOMAIN—GOOD FAITH—APPRAISAL.

An owner of property which is the subject of a condemnation proceeding may challenge the good faith of the condemning authority by contesting the condemning authority's appraisal of the property's value.

4. EMINENT DOMAIN—VALUE OF PROPERTY—APPRAISALS—BAD FAITH.

Failure of a condemning authority to accept the higher of two appraisals of the value of property to be condemned does not in itself establish bad faith on the part of the condemning authority.

5. TRIAL—JURY—SPECIAL VERDICTS—JUDGE'S DISCRETION—COURT RULES.

The question of whether or not a special verdict is required is a matter within the discretion of the trial court (GCR 1963, 514).

6. EMINENT DOMAIN—TRIAL—INSTRUCTIONS TO JURY—SPECIAL QUESTION—JUDGE'S DISCRETION—GOOD FAITH OFFER TO PURCHASE.

A trial court's refusal in a condemnation proceeding to submit to

the jury a defendant's special question regarding whether the state had made a good faith offer to purchase the defendant's property prior to instituting condemnation proceedings was not an abuse of discretion where the defendant's request was in fact for a general verdict with a special question, a practice which is not followed in Michigan and which would only have served to confuse the jury.

7. EMINENT DOMAIN—INSTRUCTIONS TO JURY—USE OF PROPERTY—PERMIT FOR USE—BURDEN OF PROOF.

A trial court erred where it instructed the jury in a condemnation case that, in order for the jury to consider the defendant's proposed use of the property for a gas station, they had to find a "real probability" and a "real possibility" that on the date of the taking a gas station permit would be issued; such an instruction imposed too high a burden of proof on the defendant property owner because he is required to show a reasonable possibility only.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso* and *Janis Meija,* Assistants Attorney General, and *George J. Platsis,* Special Assistant Attorney General, for plaintiff.

*Johnson & Johnson,* for defendants.

Before: V. J. BRENNAN, P. J., and D. F. WALSH and H. L. HEADING,* JJ,

PER CURIAM. Defendants appeal the jury award in Jackson County Circuit Court of $14,500 as just compensation for defendants' property. Defendants appeal as of right under GCR 1963, 806.1.

The facts involved in this dispute are complicated and bear statement. In November, 1968, real estate brokers and appraisers Hannibal Abood, Richard Binder, and Earl Risbridger purchased a piece of property in Blackman Township, Jackson

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

County, Michigan. The property was rectangular in shape and contained 19,454 square feet or a little less than half an acre. The property was situated at the northeast corner of Cooper Street and Rosehill Road about one-tenth of a mile from the Jackson city limits and near the state prison. This particular parcel had a frontage of 148.5 feet on Cooper and 131 feet on Rosehill. An I-94 expressway interchange was four lots away from the subject property. The land was improved with a residence which in 1973 was 70 years old and in disrepair. The zoning was B-4, general business, and the area was a mixture of older residential and sparse commercial uses. The topography was irregular and the land varied from 5 to 11 feet above street level.

On September 25, 1973, plaintiff Michigan State Highway Commission filed a petition and declaration of taking. The petition stated that the land was necessary for improvement of the Cooper Street and I-94 interchange. The petition also alleged that a good faith written offer to purchase had been made and that estimated just compensation was $14,500.

At the hearing on the issue of just compensation, plaintiff presented the testimony of real estate appraiser Willis Cushman, who stated that the fair market value of the land as of the date of taking was $14,500. Cushman considered the highest and best use of the land to be general commercial. Cushman's original appraisal in August, 1971, had been $7,500. He had used the market data approach, in which he had compared the subject property to other comparable properties, most of which were located along Cooper Street.

Cushman testified that he knew the purchase price of the subject land when he made his ap-

praisal and that the selling price was an important factor which he considered in appraising properties. However, Cushman was not permitted to state on cross-examination what price defendants had paid for the property when purchased in 1968 because the court ruled that the purchase price was not material. On a special record, defendant Binder stated the price to have been $27,-500. Binder was likewise not allowed to state the purchase price before the jury. However, during opening statement defendants' attorney had divulged the purchase price of $27,500 to the jury. Plaintiff made no objection at the time.

Defendants presented various testimony indicating that the fair market value of the property at the time of taking would be between $49,000 and $60,000. These witnesses uniformly stated that the highest and best use of the property was as a neighborhood service station site. Several comparable sites were noted by witnesses in support of their value figures.

Defendant Binder testified that the Department of Highways and Transportation had been contacted before the property was purchased, and defendant buyers were told at that time that the state had no plans to acquire that particular property for expressway interchange improvement purposes. After buying the property, Binder and the others contacted numerous oil companies in order to resell the land. They rejected the State Highway Commission's offer of $7,500 in 1971 as "totally inadequate". Likewise, they rejected the offer of $14,500 in August, 1973.

However, defense testimony conflicted over whether or not development of the property into the contemplated service station site would be permitted under B-4 zoning. Defendant Binder

stated that rezoning would be necessary while defendant Abood stated that the property was properly zoned for a service station site in 1968. Nonetheless, even defendant Abood admitted that a special use permit would be required. He testified that obtaining such special permit would be a routine matter. Regardless of this fact, testimony indicated that the only option to purchase granted for service station site development in 1969 was ultimately rejected due to the possible taking by the state.

Testimony presented by plaintiff indicated the public availability in 1962 of a report which had recommended the taking of defendants' property pursuant to an interchange improvement project. Plaintiff had obtained a preliminary title commitment on defendants' land from Burton Abstract and Title Company in June, 1964. Plaintiff's testimony in rebuttal also indicated that the party to whom defendant had offered the option to purchase, Marathon Oil Company, was not intending to purchase a neighborhood service station site in 1969.

In returning the verdict figure of just compensation for defendants' property, the jury foreman stated, "We feel that the best use of the property at the time of taking was for residential use with a value of $14,500".

Defendants bring four allegations of error which we will subsume and discuss under only three separate designations.

Defendants first claim the trial court erred reversibly in refusing to allow proofs or cross-examination concerning the purchase price which defendants paid for their proposed service station property five years before the date of taking in September, 1973.

Generally, proof of the sales price is competent to show fair market value where the sale is voluntary, not too remote in time, and not otherwise shown to have no probative value. See *In re Petition of Dillman,* 263 Mich 542, 549–550; 248 NW 894 (1933). See also *Wayne County Board of Road Commissioners v GLS LeasCo,* 394 Mich 126, 141; 229 NW2d 797 (1975). Further, the determination whether such sales price evidence should be admitted is a matter largely within the discretion of the trial judge. *State Highway Commission v McGuire,* 29 Mich App 32, 34–35; 185 NW2d 187 (1970).

In *McGuire,* we affirmed a ruling that the purchase price paid for agricultural land nine years previously had no probative value. The former price did not fairly reflect on the land's present worth in a rapidly expanding commercial and residential setting. Similarly, the trial court's decision in this case may be sustained on the same basis. The purchase price simply had no probative value where gasoline was clearly in abundance in 1968 but in severe shortage in 1973. The fact was that many independent service stations were closing in 1973 while in 1968 many were being newly franchised. Further, the lapse of nearly five years since the property was purchased was alone significant indication that the purchase price paid in 1968 was not relevant to fair market value in 1973. *State Highway Commission v McGuire, supra* at 34.

On balance, we thus find the trial court did not err reversibly by refusing to admit proofs or cross-examination concerning the purchase price which defendant paid for their property in November, 1968.

Defendants next contend that the trial court committed reversible error in refusing to place

before the jury the issue of whether plaintiff made a good faith written offer to purchase defendants' property before instituting condemnation proceedings.

A good faith written offer to purchase is required by statute before instituting condemnation proceedings. MCL 213.366(1); MSA 8.261(6)(1) states in pertinent part:

> "When the petitioner is unable to agree with any person interested in any private property for the purchase thereof, the petitioner, after making a good faith written offer to purchase the property, may file a petition for the acquisition of the property or property rights, in the circuit court of the county in which the property is located."

Were the property owner to challenge the good faith of the condemning authority, he may do so by contesting the latter's appraisal. *Muskegon v Rogoski,* 42 Mich App 594, 595; 202 NW2d 525 (1972). Clearly, defendants in this case had ample opportunity to prove lack of good faith. They introduced the owner's testimony that the state's appraisals were "ludicrous" and totally inadequate on a piece of property for which the owners had paid so much more. They cross-examined witness Cushman as to the manner in which he arrived at his appraisal, challenging the suitability of value figures he provided on comparable pieces of property. They presented the testimony of their own highly qualified witness, appraiser Charles Larson, who valued the property at $31,000 and whose appraisal the state had apparently rejected in favor of the figure obtained from Cushman. In short, defendants were able to introduce substantial evidence regarding plaintiff's compliance with the statutory good' faith requirement. The trial

court correctly noted that the failure to accept the higher appraisal did not in itself establish bad faith, especially where in rebuttal Cushman testified quite convincingly that the comparable figures used by Larson were unsuitable.

Regarding the trial court's refusal to submit defendants' special question to the jury,[1] the rule is that whether or not a special verdict is required pursuant to GCR 1963, 514 is a matter within the trial court's discretion. *Ketola v Frost,* 375 Mich 266, 274 n 4; 134 NW2d 183 (1965). See also *In re Medical Center Rehabilitation Project,* 50 Mich App 164, 168; 212 NW2d 780 (1973).

We find no decisions in which an abuse of discretion resulted from the trial court's refusal to submit special questions. In this case, the trial court's refusal to submit defendants' special question was not an abuse of discretion. What defendants in fact requested was a general verdict with a special question, a practice which Michigan does not follow. The submission of the case in this fashion to the jury would only have served to confuse them. They were told that the only issue in the case was

---

[1] "INSTRUCTION NO. _____

"I further instruct you that under the statute permitting a governmental entity, such as the Michigan State Highway Commission, to take private property for public use, that it must first make the landowner a good faith written offer to purchase his land before it is permitted to institute eminent domain or condemnation proceedings. Therefore in this case you are directed to answer the following special question:

"Did the Michigan State Highway Commission make a good faith written offer to purchase the land owned by the respondents in this case before instituting legal proceedings in this Court to condemn their land?

"Yes _____     No _____

"I further instruct you that in determining the issue of 'good faith' that you may consider the fact that the Michigan State Highway Commission was in possession of an appraisal report prepared by Mr. Charles W. Larson which estimated the fair market value of the property at a price in excess of $31,000, at the time it made a written offer to purchase respondents' property at $14,500.00."

the fair market value of the property on the date of taking. Certainly, they could use the evidence concerning plaintiff's good faith in making their determination of fair market value. If the state made a bad faith offer, the conclusion would be that the state was being unfair to the property owner and should have offered more money. Had the jury believed this to be the case, they could have awarded a figure other than the exact valuation made by the state's appraiser. In short, we find no basis for error.

Defendant argues in the third instance that the trial court gave inadequate instructions concerning the highest and best use of the property.

The trial court's charge to the jury included instructions on highest and best use and burden of proof, stating that in order for the jury to consider the gas station use, a "real probability" and "real possibility" must be found that on the date of the taking a gas station permit would be issued. We find error in this instruction.

This Court has recently reviewed a similar situation. *State Highway Commission v Haehnle,* 69 Mich App 336, 337–338; 244 NW2d 470 (1976). In *Haehnle,* we considered an instruction which told the jury that in order to assess the effects of rezoning on the value of defendant's property they must first find a "real probability" of rezoning at the time of taking. We found the instruction erroneous:

" 'But, on the other hand, it has been held, "if there is a *reasonable possibility* that the zoning classification will be changed, this possibility should be considered in arriving at the proper value." ' (Emphasis supplied.) While the trial judge was correct in instructing that the possibility of rezoning must be something more than remote, see *State Highway Commission v Minckler,* 62

Mich App 273; 233 NW2d 527 (1975), we think that his 'real probability' instruction set defendants' burden of proof too high under the existing standard announced in *Eilender, supra." State Highway Commission v Haehnle, supra* at 337–338; also quoting *State Highway Commissioner v Eilender,* 362 Mich 697, 699; 108 NW2d 755 (1961).

In light of this holding, the trial court in the instant case committed reversible error. The jury here found that the best use of the property at the time of the taking was for residential use. Consequently, on review we cannot determine from the record whether the jury in considering the highest and best use may not have felt precluded from considering the possibility of use for a service station when the court instructed that a "real probability" rather than "reasonable possibility" of obtaining the use permit must be found prior to considering best use as a service station. Given the natural and common sense adaptability of such a site to service station use as opposed to residential use, we are inclined to believe the jury did not return this finding because they felt prohibited from doing so. In any case, the high likelihood that the higher burden of finding a real probability of obtaining the special use permit adversely affected their consideration of the highest and best use requires us to reverse the decision below and grant a new trial. See *State Highway Commissioner v Eilender, supra* at 699.

Reversed and remanded for proceedings in conformity with this opinion.