### John Palmer v. George M. Rich.

*Drainage laws of* 1857 *and* 1859: *void proceedings.*—Proceedings being taken under the act of 1857 "to provide for the draining of swamps, marshes and other low lands," (*Comp. L. p.* 444) as amended in 1859 (*Laws* 1859, *p.* 499), a venire was issued by the chairman of the drain commissioners without any application being made to the commissioners by resident freeholders. As the amendatory act plainly requires this, the proceedings were held void.

*Drainage law of* 1859: *saving clause.* — In the act of 1859 the saving of "any engagement, contract or undertaking heretofore entered into by the commissioners," does not keep alive any proceedings commenced under the old law, in any incipient stage, where no vested rights have accrued.

*Drainage law of* 1859: *deeds on sales for taxes.* — Where lands are sold for taxes which include taxes assessed under the drainage law of 1859, the deeds given by the Auditor General are prima facie evidence of regular proceedings in the assessment and subsequent steps to a sale.

*Removing cloud upon title: injunction to stay tax sale.* — Where an illegal tax is assessed upon lands, and by statute the deed given on a sale of the land therefor would be prima facie evidence of regular proceedings in the assessment and subsequent steps to a sale, such sale would operate to create a cloud upon complainant's title, notwithstanding the illegality must appear on the face of the proceedings: and the owner may therefore maintain a bill in equity to stay the tax sale.

PALMER *v.* RICH.

*Jurisdiction in equity: averment as to amount in controversy.* — Bill in equity to restrain a sale of lands for taxes. The bill avered the tax to be "about one hundred and fifty dollars." Held a sufficient averment that the tax was more than one hundred dollars.

*Bill to restrain sale for taxes: parties.* — To a bill filed against a county treasurer to restrain a sale for taxes assessed under the drainage law of 1859, and to annul the tax, the contractors for making the drains are not necessary parties.

But the Auditor General is a necessary party: as in all proceedings to collect the taxes after they are returned to his office, or to sell the lands to enforce them, the county treasurer is only the agent of the Auditor General, and does not act as a mere county officer.

*Practice: leave to amend at the hearing.* — An objection for the want of a necessary party in chancery was not made until the hearing. The bill made out a case on all other points, and the Court granted decree for complainant as prayed. On appeal, the Supreme Court, in reversing the decree for want of parties, granted leave to amend, and allowed an injunction which had been decreed to stand until the further order of the Court below, to which the case was remitted.

*Heard April 22d. Decided May 10th.*

Appeal in chancery from the Wayne Circuit. The facts are stated in the opinion.

*E. C. Hinsdale*, for complainant:

1. The tax was clearly levied without any authority on the part of the drain commissioners.

Under the act as amended, in order to give the drain commissioners jurisdiction to take any proceedings in reference to the construction of a drain, it was necessary that an application should be made to them in writing, by ten or more resident freeholders. *Laws of* 1859, *p.* 500. The bill shows that no such application was made to the commissioners.

The statute also contemplates the drainage of lands when the public health requires it, and taxation to meet the expense of such drainage.

The bill shows that in all the proceedings of the drain commissioners, nothing appears to show that in their judgment or in the judgment of a jury the public health was affected by the swamps to be drained.

The bill also shows that the ditch was not let upon

the day advertised, and that it was let without any public notice of the letting thereof.

For these and other reasons appearing on the face of the bill, we insist that the tax was levied without any authority, and that it is illegal and void.

2. The complainant's proper remedy is by injunction: — 3 *Ohio*, 86 ; 16 *Ohio*, 574 ; 38 *Penn.* 312 ; 10 *Wis.* 242 ; 24 *Mo.* 20 ; 3 *How.* 441 ; 9 *Wheat.* 738 ; 18 *Md.* 284.

This Court has virtually settled the question, that injunction is the proper remedy, by considering cases certainly not more within the province of a court of equity than this : — *Woodbridge v. The City of Detroit*, 8 *Mich.* 279 ; *The Sisters of Charity v. The City of Detroit*, 9 *Mich.* 94 ; *Jackson v. The City of Detroit*, 10 *Mich.* 248 ; *Lefevre v. The City of Detroit*, 2 *Mich.* 586 ; *Bagg v. The City of Detroit*, 5 *Mich.* 336.

3. This drainage tax stands upon the same basis as other taxes, and, if valid, becomes a lien at the same time, November 15th. Laws of 1858, p. 183, § 38.

Though invalid, it is still a cloud upon the title from that date, and if one sold with warranty, he would be bound to take care of the taxes as an incumbrance : — 6 *Ohio Cond.* 80 ; 1 *Beasley*, 227.

4. The second ground of demurrer, is, that the bill does not show that the amount of tax is sufficient to give jurisdiction.

This is not a ground of demurrer. In order to be demurrable for want of jurisdiction as to amount, it must affirmatively appear that the amount is too small : — *Gamber v. Holben*, 5 *Mich.* 335.

But as a matter of fact, the bill *does* show that the amount of the *tax* is over $150, and that the value of the *land* is $800.

5. The contractors are not necessary parties. They are at most but *consequentially* interested in the result, and are

clearly within the rule that such persons need not be parties: — *See Milf. Eq. Pl.* 171; *Story Eq. Pl.* § 140.

In general, those only are necessary parties against whom there can be a decree, yet there can be no decree against the contractors: — 1 *Dan. Ch. Pr.* 342; *Story Eq. Pl.* § 231.

*Backus & Harbaugh,* for defendant:

1. The proceedings set forth in the bill are sufficient to sustain the tax. They were sufficient under the law of 1857; and having originated under that law, they were saved by section 25 of the amendatory act of 1859, and no petition of freeholders for a venire was necessary.

2. But if the bill showed the proceedings to be manifestly defective, chancery would have no jurisdiction to interfere. The complainant does not make out a case falling under 'any acknowledged head of equitable jurisdiction. If the proceedings of the drain commissioners are illegal and void, as alleged in the bill, the illegality appears on the face of the proceedings, and they can not create a lien upon the premises, or a cloud upon the title: and the remedy of complainant is perfect at law when rights are sought to be enforced under the sale: — 9 *Paige,* 390; 26 *Wend.* 132; 9 *Paige,* 24; 14 *N. Y.* 534; 18 *N. Y.* 155; 15 *Barb.* 384; 4 *Barb.* 10; 25 *Conn.* 239; 5 *R. I.* 473; 6 *Gill,* 391; 2 *Cal.* 590; 20 *Penn.* 227; 24 *Mo.* 20.

It is submitted that the Auditor General has no power to give a deed on these sales. This power is omitted in the amendatory law of 1859, and in the absence of power by statute, none exists: — *Sibley v. Smith,* 2 *Mich.* 487.

3. The averment in the bill that the tax is "*about* one hundred and fifty dollars," does not sufficiently show jurisdiction. The averments of the bill, and especially those necessary to give jurisdiction, must be clear, certain and explicit: — *Mitf. Pl.* 45; 1 *Ves.* 56; 4 *Paige,* 365;

*Welf. Eq. Pl.* 10; *Story Eq. Pl.* §§ 26, 28, 240, 252, 256.

4. The contractors are necessary parties to the bill. They have a specific, direct interest in the tax.

5. The Auditor General is also a necessary party. The proceedings of sale are conducted by him, and the county treasurer is but his mere agent. So clear is this that if the county treasurer does not, on or before a given day, qualify by giving bonds to the approval of the Auditor General, the Auditor employs some other agent. *Comp. L. p.* 312, § 96.

CAMPBELL J.:

Complainant filed his bill to prevent the sale of certain lands in the township of Romulus, for a ditch assessment. The principal objections are that the *venire* was issued without proper authority; that it is defective in substance; that the verdict or finding of the jury is defective; and that the proceedings in letting the contracts are defective for want of legal notices.

The proceedings are alleged to have been had under the law of 1859. (*Laws* 1859, *p.* 499). That was the first law providing for a jury. The *venire* was issued by the chairman of the commissioners, February 25th, 1859. No application was made to the commissioners by resident freeholders, as provided by the act. The act of 1859 plainly requires this. The *venire* was issued under that law, and would not have been valid under the previous statutes. And the law of 1859, repealing several sections of the previous statute, saves only "any *engagement, contract or undertaking, heretofore entered into by the commissioners*": *p.* 504. The new statute does not contemplate any action commenced under the old law as subject to be kept alive in any incipient stage, where no vested rights have accrued. And it is impossible to regard any rights as having become fixed here, when the very purpose of

a jury is to determine the necessity of having any ditch at all. We can not assume that any steps have been, or could have been, lawfully taken in the present case, except under the statute of 1859. If, therefore, the allegations of the bill are to be taken as true—and upon demurrer they must be—the bill makes out a good ground of complaint.

It is suggested, however, that, if this tax is illegal, the illegality must appear upon its face, and therefore a sale under it would not operate to create a cloud upon complainant's title. It is certainly true that all steps in the assessment of a tax must appear of record. No part of the proceedings can rest in parol, and no presumptions can be raised of essential facts not appearing in writing. And if the tax deed is not *prima facie* evidence of regularity, then the objection may have considerable force. It is necessary, therefore, to examine into the state of the law on this subject.

The deeds made by the Auditor General, upon ordinary sales for taxes, are *prima facie* evidence of regular proceedings, in the assessment and subsequent steps to a sale. This tax or assessment, being exceptional and special, must be brought expressly under some similar provision, or the deed will not raise any such presumptions.

Under the Compiled Laws the sale for drainage assessments was kept entirely separate from all others. The land could not be bid in for the State.

The purchaser was obliged to pay all taxes for which the land had been bid in by the State, and was entitled to redeem from all other tax purchasers. *Comp. L.* § 1406.

By the law of 1859 these provisions were stricken out, and the section was made to read as follows: — "All lands upon which a tax shall be levied by virtue of this act, which may be returned to the office of the Auditor General delinquent for such tax, *shall be adver-*

*tised and sold for such taxes, at the same time and in the same manner, and subject to like redemption, as lands delinquent for other taxes*": *p.* 502. The provisions before referred to had made these tax sales exceptional in certain particulars, and the effect of striking them out, and adding the clause which was before omitted, "*subject to like redemption*," must be, we think, to do away with the former qualifications, which required the sale to be separate, and imposed conditions on the purchaser. The old law provided when and how a deed for drainage tax sales should be made. The new law makes no separate provision for a deed whatever. But if the sale is not separate, then, being had for all delinquent taxes, it must either entitle the purchaser to a deed which will embrace the drainage tax, or else it will require separate certificates and conveyances, although the sale was single. We can discover no meaning in the amendatory act, unless it is designed to put these taxes in the same condition with all others, requiring but a single sale for all, and making that sale subject to uniform conditions. And if this is its effect, there must be, we think, a similar uniformity in conveying, and the deed issued by the Auditor General, instead of being evidence of regularity in part, raises the presumption of regularity in favor of all the taxes for which the land was sold. Any other meaning must do· violence to the sense of the statute. And while proceedings to divest private property can not be aided by unauthorized presumptions, we are bound to accept a fair and natural interpretation in preference to one that does violence to the language used. We think the deed for such taxes would be *prima facie* evidence of regularity, and that it would therefore create a cloud against which equity will grant relief.

It is objected, however, that the bill does not show a case within the jurisdiction, because the tax is not alleged to be above one hundred dollars. The bill alleges it to

be "about one hundred and fifty dollars." This is not a very accurate allegation, but it means more than one hundred dollars. Whether this is one of those cases in which the value of the property imperiled is the test of jurisdiction, it is not therefore important to inquire.

It is also objected that the contractors are not made parties, and that they are directly interested in the fund which is their only resort. The statute provides that no money shall be paid on any warrant drawn by the commissioners, out of any other fund than that derived from said taxes:—*Laws* 1859, *p.* 502. The former statute in addition to this prohibited the Auditor General from crediting or paying these taxes to the counties, until actually paid:—*Comp. Laws*, § 1405; while other delinquent taxes are credited when returned, and the Auditor is obliged to refund all delinquent town or county taxes received by him in excess of the state tax. *Comp. L.* § 856. It may be questioned whether, under the amended law of 1859, the county treasurer is not now entitled to retain in his hands the full amount of these assessments, as he is of all others, before he is called upon to pay over any moneys to the Auditor General. The statutes are not by any means as clear as might be desired on this point. But be this as it may, we think the contractors are not so interested as to make them necessary parties. The fund, as such, does not belong to them. Their warrants are payable out of it. But these warrants are negotiable, and receiveable on sales for those taxes: — *Comp. L.* § 1415. And until warrants are issued upon audited claims, the contractors have no rights in the fund. Their whole interest depends on the allowance of their claims by the commissioners:— *Comp. L.* § 1414. There are other accounts and expenses which are payable in the same way. The funds of the separate drains are not all kept separate, but several may go into one drainage fund; and it would be impracticable to attempt to trace

out the rights of warrant holders in the moneys raised from particular parcels of land. Each town collects the drain taxes assessed on lands within it. Warrants for making one drain may have been paid out of moneys assessed for another. Any attempt to trace out the rights of individual creditors of the fund would lead to endless confusion. The case is one where the public authorities adequately represent all parties, and we do not think it necessary to introduce others. Cases may possibly arise under some of our statutes, where private rights are so directly involved as to make their holders necessary parties to any litigation touching the fund. The interest here is too indirect to require it.

An additional ground of demurrer was taken *ore tenus*, that the Auditor General is a necessary party to a bill filed to cancel a tax.

This ground is well taken. The taxes remain in his office, and in all proceedings to collect them after they are returned. there, or to sell the lands to enforce them, the county treasurer is the mere agent of the Auditor General, and does not act as a mere county officer. The bill prays, as it should, in such cases, not merely that the tortious act of an illegal sale may be restrained, but also that the tax may be annulled. This relief, if granted, operates directly upon the Auditor's books and entries, and imposes upon him certain duties concerning the taxes themselves, and the adjustment of accounts upon the basis of their rejection. The bill must be amended in this respect, although good on its face as to the merits. He should be allowed, therefore, to controvert the facts if he sees fit. Although admitted on demurrer, they may be put in issue by the defendants upon the introduction of proper parties. As this objection was not taken before the hearing, and as the bill makes out a case upon all other points, we shall, in reversing the decree below, grant leave to amend, and allow the [injunction to stand until the further order of

the Court below, to which the case must be remitted for further proceedings. Defendant is entitled to costs of this Court. Costs below will abide the event of the suit.

MANNING AND CHRISTIANCY JJ. concurred.

MARTIN CH., J.: I concur that the Auditor General should be a party, if the bill can in any event be sustained.