## Myron Kinyon v. Clement Duchene.

*Appointment of Drain Commissioners.* Boards of Supervisors have no power to select, from their own members, Drain Commissioners, which, by Act No. 216 of the Laws of 1861 (p. 452), they are authorized to appoint; and the acts of Commissioners so appointed are void.

*Equity: Jurisdiction in tax cases.* A court of equity has power, in a proper case, to enjoin the collection of an illegal tax.

*Heard October 6, 7. Decided October 11.*

Appeal in Chancery from St. Clair Circuit.

The complainant filed his bill in the Circuit Court for the County of St. Clair in Chancery, against the defendant, as Treasurer of the town of China, to restrain the collection of a tax levied by the Board of Drain Commissioners for that county, upon the property of the complainant, for the construction of a ditch under proceedings alleged to be in pursuance of Act No. 216 of the Laws of 1861, and the acts amendatory thereto. The Court below dismissed the bill, and the complainant appeals to this Court.

*T. C. Owen* and *W. T. Mitchell,* for complainant.

*R. P. Eldredge,* for defendant.

CHRISTIANCY, J.

This was a bill to enjoin the collection of certain drain or ditch taxes, attempted to be assessed upon the lands of complainant by three persons assuming to act as a Board of Drain Commissioners, which taxes the defendant, as township treasurer, was, by the warrant of the Supervisor of the township, directed to collect.

Upon a hearing upon pleadings and proofs, the Court below dismissed the bill; and complainant has appealed to this Court.

Several questions were raised and discussed on the argument. One point, however, is, we think, decisive of the cause.

The several persons assuming to act as a Board of Drain Commissioners, were appointed by the Board of Supervisors in 1864, under the act of 1861 then in force (*Laws of 1861, p. 452, § 1*). They did not, however, organize as a board until the summer of 1867, soon after which their proceedings were commenced for laying out and constructing the ditch and raising the tax in question.

At the time of their appointment as such Commissioners, they were all of them members of the Board of Supervisors which made the appointment. Whether they voted for their own appointment does not affirmatively appear, but they had as much right to do so as the others had to vote for them.

The eighteenth and nineteenth sections of the act provide that, "For the information of all persons concerned, the said Commissioners shall make a full report in writing to the Board of Supervisors of the proper county, at the next and each annual session thereafter, setting forth as near as practicable:

"*First.* What proportion of the ditches or drains, for the construction of which a tax has been levied, are completed, and the amount paid therefor;

"*Second.* What proportion is under contract and not completed, and the amount to be paid therefor, and whether such contract or contracts are likely to be performed; *also the proportion not yet under contract,* and the estimated cost of their construction, and whether there is a sufficient amount of unexpended funds, created by such tax, to complete the work;

"*Third.* What amount of such funds had been expended and for what purpose, exhibiting the items of such expend-

iture as fully as may be practicable; and also, what amount of warrants has been drawn by them against such fund, and shall also report all such other matters in relation to the subject as they may deem necessary, or said Board of Supervisors may require.

"SEC. 19. The Board of Supervisors of the several counties in which Commissioners shall be appointed, shall have full power and authority to control the action of such Commissioners (and may make any order in relation to such ditches or drains or other matter relating thereto), not inconsistent with the public interests or the rights of individuals (which order shall be binding on such Commissioners); they shall also have power to remove any or all such Commissioners for cause deemed by them sufficient, and to appoint others in their stead with like powers and liabilities."

It is evident from these sections that the statute intended to give the Board of Supervisors the power, and to impose upon them the duty, as a wholly separate and independent board, to supervise the action of the Drain Commissioners, and to check or restrain any of their action which they should deem extravagant or injudicious. It contemplated the unprejudiced separate action of two separate boards upon all matters on which the Drain Commissioners were authorized to act. This object would be defeated if the Board of Supervisors could appoint their own members as members of the other board. If these Commissioners could sit in the Board of Supervisors, they might vote upon the approval of their own acts. The duties of the two offices were incompatible; and it was no more competent for the same persons to hold both at the same time, than for the same man to hold at the same time the office of Senator and that of a Member of the House in the State Legislature.

Doubtless if a man were elected to both the latter

KINYON *v.* DUCHENE.

offices at the same time, he might elect which he would accept. And it may be urged that the members appointed as Commissioners might elect which office they would hold; might resign the office of Supervisor and act in that of Commissioner. I doubt this, when they are members of the board making the appointment, and the appointment is made before the resignation. But, granting that this might have been done, there is not only nothing to show that it was done, but on the contrary, being shown to have been Supervisors at the time of the appointment, they must, till the contrary be shown, be presumed to continue such till the expiration of the term for which they were elected.

If, therefore, they could elect, they made their election at the time (by continuing in that office) to hold the office of supervisor; and, having elected once, they cannot elect again.

We think their appointment as Drain Commissioners, and all their action upon which the taxes in question depended, were void.

But it is urged by defendant's counsel that a court of equity has no jurisdiction to try the validity of these taxes, or to enjoin their collection. In reply to this it is sufficient to refer to the case of *Palmer v. Rich, 12 Mich., 414;* see also *Miller v. Grandy, 13 Mich., 540; Woodbridge v. City of Detroit, 8 Mich., 274; Scofield v. City of Lansing, 17 Mich., 437;* and *Motz et al. v. City of Detroit, 18 Mich., 495.*

The decree of the Court below dismissing the bill must be reversed with costs, and a decree entered in this Court granting the relief prayed by the bill.

The other Justices concurred.