## FOLKERT C. FOLKERTS ET AL. v. ALBERT L. POWER.

*Taxes—Illegal enrollment—Injunction—Addition of formal party.*

A tax is invalid if it appears only upon a roll to which it does not belong, and is omitted from a roll to which the law authorizing . it expressly assigned it.

The charter of Alpena (Act 249 of 1871) provides for two assessment rolls, one of which, called the "city roll," should contain, among other designated taxes, the school taxes assessed for the city, while the other was to contain taxes not assigned to the city roll. *Held* that school taxes enrolled upon the second were invalid.

A tax cannot be collected if not authorized by written law.

Injunction lies to restrain the collection of a tax illegally assessed, if it is made a lien on the land.

Where an invalid tax includes an assessment on personalty as well as on realty, a court which obtains jurisdiction to restrain the collection of the tax on the land may properly give relief from the assessment on personalty.

Where an injunction is asked to restrain the collection of a school tax irregularly assessed, the school district is a necessary party; but where it had been omitted, and the tax was found to be absolutely illegal, it was *held* sufficient to add the district as a formal party before entering final decree.

Appeal from Alpena. Submitted October 29. Decided November 29.

INJUNCTION against the city treasurer of Alpena to restrain him from collecting certain school taxes averred to have been improperly assessed. Defendant appeals.

*J. B. Tuttle, J. D. Turnbull, Marston & Hatch* and *McDonald & Cobb* for complainants. The Supreme Court has jurisdiction to remove a cloud on title consisting of a tax on land, *Thomas v. Gain,* 35 Mich., 165; where equity has properly obtained jurisdiction of a question in controversy, it will retain it to dispose of the entire controversy, *Miller v. Stepper,* 32 Mich., 204; 3 Waite's Actions, 205; an appellate court will allow an amend-

ment to a bill if the cause was tried as it must have been under such amendment, *Tremaine v. Hitchcock*, 23 Wall., 518; as by the addition of parties, *Lewis v. Darling*, 16 How., 1; *Palmer v. Rich*, 12 Mich., 414; 1 Barb. Ch. Pr., 397; 1 Dan. Ch. Pr., 418.

*J. D. Holmes, Chas. Draper* and *D. C. Holbrook* for defendant. Demurrer to a bill for want of proper parties is well taken if the defect appears on the face of the bill, *Betton v. Williams*, 4 Fla., 11; *Gilmore v. Johnston*, 14 Ga., 683; the fact that a party will be interested in a decree is a sufficient reason why he should be made a co-defendant, *Jackson v. Waters*, 10 Ga., 546; an injunction will never be granted against persons who are not parties, *Fellows v. Fellows*, 4 Johns. Ch., 25; *Iveson v. Harris*, 7 Ves., 257; equity will not restrain collection of a tax on personalty, *Youngblood v. Sexton*, 32 Mich., 406; *Hagenbuch v. Howard*, 34 Mich., 1; *Mears v. Howarth*, id., 19; *Henry v. Gregory*, 29 Mich., 68; *Lockwood v. St. Louis*, 24 Mo., 20; *Sayre v. Tompkins*, 23 Mo., 443; *Susquehannah Bank v. Supervisors*, 25 N. Y., 312; Cooley on Taxation, 538; Hilliard on Injunctions, 458.

GRAVES, J. The elaborate effort of counsel to vindicate the tax proceedings assailed by this bill has not satisfied the court.

The main question, and that which is certainly decisive, depends on the city charter. In 1867 the Legislature enacted that the school inspectors of the township of Alpena were authorized to organize, according to the provisions of the school laws of the State, the entire township, or so much of it as they deemed necessary, "into a school district, to be known as Union School District number One of said township." The inspectors, acting upon this authority, organized the district over the whole territory of the township. Subsequently, and on the 29th of March, 1871, the Legislature incorporated on a small part of the same territory the city of Alpena. The

act of incorporation took immediate effect, and the creation of the city government carried with it a change of local agency in the assessment and collection of taxes within the city limits, and consequently over so much of the territory of the school district as the city covered.

The powers possessed there by the township authorities previously, at once came to an end, and at the same time the city authorities were vested with such as were thought suitable and necessary. No other agency remained and no tax could be collected without written law. The charter declared that it should not be deemed in any manner to affect or modify the act of 1867 authorizing the organization of the school district, and it seems to be supposed that this was meant to express the sense of the Legislature that the charter should not affect the pre-existing modes and times for collecting taxes for the district. But this is not so. The object was to guard against any inference that the school district corporation was infringed by the charter, and not to exclude alterations in regard to the time and manner of collecting the taxes necessary for it. They were distinct matters which had never been confided to it. The section containing this declaration and other sections closely associated were enacting a change in the agencies and methods of dealing with district taxes, and it would be unreasonable to say that the Legislature was declaring in the same breath that such changes were not intended.

The charter takes notice of the general regulations for the assessment and collection of taxes, and accommodates itself to them, except in so far as special regulations are considered needful. It also recognizes the general school law and adapts itself to it.

In regard to the assessment and collection of all taxes for city purposes, and such taxes for the school district as are leviable within the limits of the city, there are special provisions. These taxes are to be spread upon a distinct roll, denominated the "city roll," and a series of particular regulations isolate and distinguish it.

After confirmation by the board of review it is made the comptroller's duty to spread upon it the city, school and highway taxes, and when this shall have been done, and on the second Monday of July, he is next required to deliver it to the city treasurer, in whose office it is to remain for forty days to enable the tax-payers to make voluntary payment. · For the first twenty days there are no allowances for collection services, but those who pay during the next twenty are required to add one per cent for the treasurer. Up to this time the roll in question is retained in the treasurer's office without any warrant to coerce collection. Within ten days after the end of this period of opportunity for voluntary payment of city and school taxes the comptroller is to make a copy of the whole roll except the portions disposed of by payments, and add such percentage for collection, not exceeding four per cent, as shall have been fixed by the common council. He is then to file the original in his office, and attach to this copy a proper collection warrant, directed to the city treasurer, and returnable on the last Saturday of the October·following, and this period may be extended or renewed from time to time by the common council.

Such are the chief provisions relative to this "city roll" to which the law in express terms assigns the school tax, and the regulations and references are too various and explicit to allow it to be supposed that it was not really designed to have that tax placed on such roll. Provision is made for the construction of a second roll as a means to collect other taxes than those allotted to the "city roll," and whatever impressions may be felt of the policy of these regulations, or of the fitness of the provisions, there is no ground to contend that the law authorized the setting down of the school tax on the second roll. If raised at all, that tax could be raised only by means of the "city roll." No other vehicle was provided.

The comptroller is ordered to prepare the second roll by making a certified copy of the original roll after its

confirmation by the board of review. And this second roll he is to retain until after equalization by the board of supervisors; and all State and county taxes, and all others not assigned to the "city roll," are required to be placed on it, but no others. The comptroller is required to attach a collection warrant in the same form as prescribed for tax warrants directed to township treasurers. It will be perceived, therefore, that the warrants on the respective rolls must differ widely in sense and operation; but apart from the differences referred to, the law marks another material distinction. The taxes on real estate for city purposes, and the legal charges, are declared to be a charge on the second Monday of July against the person owning the estate, and to be a lien on the fifteenth day of November of the same year. But the taxes and legal charges on the second roll are declared to be a charge on the second Monday of May against the owner of the land, and a lien from the first Monday in December of the same year.

It appears clear to us that the assignment of the tax in question to the second roll was in derogation of law, and that the tax itself so placed was inoperative.

The argument based on the inconvenience consequent on this construction might be entitled to weight if the provisions were at all doubtful on this point, but they are not. Whether the Legislature consciously designed to carry the collection of the school taxes over to a time beyond that prescribed for collecting State and county taxes, may be a question. But according to the evidence they have given us of their purpose and meaning, and which evidence is binding upon us, there is no question at all.

The tax against the personal property was no cause for equitable interference. But the amount of tax charged against the real estate is $178.60, and the imposition itself is of that class which the statute makes a lien, and the case is consequently well brought, accord-

ing to our previous decisions, to relieve the land from the cloud caused by the tax proceedings. And having jurisdiction of the cause on this foundation, we think it would be no less than a sacrifice of justice to a misdirected scruple to refuse relief on that part of the case relating to the personal property.

The school district is a necessary party and should have been brought in. But this suit has been pending nearly eight years, and the contest is one where there is no room for doubt in regard to the result on the merits. We know that the presence of the district as a party could have made no difference. The proceeding assailed could not be successfully defended by any party. This is demonstrable. Ought the court then to throw out the case and leave the controversy unsettled, and deliver over the numerous interests involved, both public and private, to future contention, because the district has not been brought in by name as a defendant? We think not. As no other result upon the merits would be possible, it is our opinion the case is within the principle which allows the addition of a party at the hearing. No one can be prejudiced by such practice. But a rejection of the bill at this time for want of parties would cause great hardship.

The case will be remanded with directions to amend the proceedings by adding the district as a formal party, and for the entry of a final decree for complainants after such amendment, and they will recover their costs of the court below.

CAMPBELL, C. J. and COOLEY, J. concurred: MARSTON, J. did not sit in this case.