BURCH v. STATE HIGHWAY COMMISSIONER.

1. States—Officers—Circuit Court.
   A bill to enjoin the present State highway commissioner from permitting the continuance of a previously created situation with respect to drainage of water over plaintiffs' lands seeks relief which may not be granted against a State officer by the circuit court (CL 1948, § 636.3).

2. Costs — Public Question — Drains — Jurisdiction — Circuit Courts — Equity.
   No costs are allowed in suit by property owners against State highway commissioner for injunction and damages with respect to interference with drains on their property incident to highway construction in 1942, a public question being involved as to jurisdiction of a circuit court and a court of equity to grant such relief (CL 1948, § 636.3; PA 1956, No 40, as amended).

Black, J., dissenting.

References for Points in Headnotes
[2] 14 Am Jur, Costs § 37.

Appeal from Lenawee; Martin (Rex B.), J.  Submitted October 4, 1960.  (Docket No. 12, Calendar No. 48,330.)  Decided February 28, 1961.

Bill by Frank C. Burch and Mabel M. Burch against John C. Mackie, State Highway Commissioner, for mandatory injunction and damages in respect to drainage incident to highway construction.  Dismissed on motion.  Plaintiffs appeal. Affirmed.

*Aloysius B. O'Mara,* for plaintiffs.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Ernest O. Zirkalos,* Assistant Attorney General, for defendant.

CARR, J.  Plaintiffs have brought this suit against defendant State highway commissioner, seeking injunctive relief and also damages.  They alleged in their bill of complaint that they are the owners of certain described real estate in Lenawee county which they acquired in 1934, that at that time the property was drained by tiles from their fields which emptied the surface water into a ditch along the north side of highway US–223, and that the drainage system as then existing was adequate to enable them to use their lands for agricultural purposes. Plaintiffs further averred that in 1942 the State highway department caused the highway in question to be widened and resurfaced, that in connection with the work of construction and maintenance certain tile drains of plaintiffs were disturbed, that the existing ditch was also changed, and that, in consequence, the drainage facilities became inadequate.

Plaintiffs asserted in their pleading that in the making of the highway improvement referred to the State highway department, either alone or in con-

junction with the Lenawee road commission, caused such changes in the drainage arrangement previously existing as resulted in unreasonable diversion of surface water, causing the same to spread over farm property owned by plaintiffs. Complaint was also made that the road construction work raised the crown of the highway, thereby causing a barrier to the natural flow of surface water. For the purpose of obtaining relief plaintiffs sought action by the State highway department, the Lenawee county road commission, and the drain commissioner of Lenawee county, to remedy the situation. Their claim in this respect as well as the nature of the relief that they were seeking was suggested by paragraph 11 of their pleading, which read as follows:

"Plaintiffs have attempted, through negotiation and friendly discussion over the several years, to obtain relief and stand ready, willing, and able, at this date, to do equity in order to restore the natural and pre-existing drainage or collaborate in a new drainage system which will bring about the desired relief."

Because of the alleged interference with the drainage system as it existed prior to 1942, plaintiffs claimed that their property had been damaged, that they were entitled to injunctive relief restraining defendant from continuing to permit the alleged diversion of water from the highway surface, and water which would naturally flow through the adjacent ditch had it been left in its previous condition, upon plaintiffs' property, and that they are entitled to recover damages for the loss of profits that they might have received from 5 acres of their land over a period of 16 years, in the total sum of $6,000, and also special damages amounting to $3,000 for "lost time, aggravation, medical expense, and legal fees

incident to the attempted correction of the defendant's wrongdoing."

To the bill of complaint the attorney general of the State, appearing on behalf of defendant, filed a motion to dismiss, claiming that said bill failed to state a cause of action against defendant, that the highway department, in carrying on the work of which plaintiffs complained, was engaged in a governmental function and, in consequence, immune from suit and liability, and that the court was without jurisdiction to entertain such suit. The claim was also advanced that plaintiffs' proper remedy for the alleviation of the condition claimed by them is afforded by the statutes of the State relating to the establishment of drains by the county drain commissioner. The motion further asserted that the conditions of which plaintiffs complained had existed for such period of time as to preclude the bringing of suit based thereon, and that neither statute nor common law authorized the granting of injunctive relief of the character sought, or an award of damages against defendant or the State of Michigan, because of the acts of the commissioner while engaged in the construction and maintenance of highways.

After a hearing before the trial court on the motion to dismiss the circuit judge concluded that said motion was well-founded and an order was entered accordingly dismissing plaintiffs' bill of complaint. From such order plaintiffs have appealed, claiming that the trial judge was in error in holding that he was without jurisdiction to hear and determine the issues sought to be raised.

It is apparent from the averments in plaintiffs' pleading that they based their claimed cause of action primarily on what occurred in connection with the improvement of highway US–223 by the State highway department in 1942. We may take

notice of the fact that the defendant in the present suit was not commissioner at that time, nor is there anything in the bill of complaint suggesting any affirmative act on his part that has operated to their detriment. It is obvious that the relief sought was predicated in the final analysis on the theory that defendant had permitted the previously created situation to continue, and that it was his duty to take action to restore the drainage conditions with reference to plaintiffs' property that existed prior to the highway improvement operations in 1942. In other words, a mandatory injunction was sought against him for the purpose of requiring him to establish, or re-establish, drainage facilities of such nature and extent as would permit plaintiffs to make full use of their property. While certain averments of their pleading suggest that they were relying to some extent on the theory that their land had been taken by the State highway department for public use, it is apparent that their claim for relief was actually based on the theory that the property had been damaged by the wrongful acts of the State highway department in years past. The averments as to the damages that they had sustained are inconsistent with any other assumption.

The trial judge in his opinion on the motion to dismiss called attention to the decision of this Court in *Manion* v. *State Highway Commissioner,* 303 Mich 1, in which it was held that in operating a ferry across the Straits of Mackinac for the purpose of transporting vehicles, freight, and passengers, the State was performing a governmental function, citing in support of such conclusion *Longstreet* v. *County of Mecosta,* 228 Mich 542. The Court held that defendant was not liable, in an action instituted in the court of claims of the State, because of personal injuries sustained by plaintiff in a collision between 2 State ferries. It was declared that the

State had not waived its right to assert the defense of sovereign immunity from liability, and that there is a distinction between such liability and liability to suit.

In view of the nature of the relief sought by way of mandatory injunction the case of *Minarik* v. *State Highway Commissioner*, 336 Mich 209, is in point. There the plaintiffs sought a mandatory injunction against the defendant to require the cleaning out of a ditch and deepening it so as to restore it to the condition existing when dug. It was pointed out as the basis for denying relief that plaintiff was seeking an order equivalent to a writ of mandamus, and that under the statute (CL 1948, § 636.3 [Stat Ann § 27.2230]) the circuit court had no jurisdiction to issue a writ of mandamus against a State officer. The Court (p 213) declared that:

"No litigant can mandamus a State officer in the circuit court simply by using the term injunction instead of mandamus when it is the latter remedy that he seeks. The circuit judge correctly held that plaintiffs were seeking a mandamus under the guise or misnomer of a mandatory injunction."

Counsel for appellants cites and relies on *Hunt* v. *State Highway Commissioner*, 350 Mich 309. That was a suit in equity to enjoin condemnation proceedings and to obtain specific performance of an agreement for the purchase of property for highway purposes. The trial court granted the relief sought and this Court affirmed. The proofs indicated that a contract had been entered into by the parties, that the defendant was bound thereby, and that the court of equity was empowered to grant the relief sought. No question of tort liability was involved, or of the issuance of a mandatory injunction equivalent to a writ of mandamus. The *Hunt Case* is not in point in the instant controversy.

Counsel for appellants has also called attention to decisions involving suits brought against local authorities, including *Sweeney* v. *Hillsdale County Board of Road Commissioners,* 293 Mich 624, and *Bennett* v. *County of Eaton,* 340 Mich 330. It was conceded in the *Sweeney Case* that plaintiff could not recover damages against the defendant county board of road commissioners, resulting from flooding of his lands, because there was no statutory authority rendering said defendants liable in tort for damages caused while acting as agents of a municipality engaged in the performance of a governmental function. Under the facts presented it was held that plaintiff was entitled to injunctive relief. A like conclusion was reached in *Bennett* v. *County of Eaton, supra,* where it was held that Eaton county and the board of county road commissioners should be enjoined from unlawfully causing water to flow over plaintiffs' property to the damage thereof. The proofs indicated that because of the installation of a culvert surface waters were diverted from their natural flow, creating the condition of which the plaintiffs complained. In neither of these cases was the question of jurisdiction of the circuit court involved. The granting of the injunctive relief sought was not precluded by the statutory inhibition invoked in *Minarik* v. *State Highway Commissioner, supra,* and likewise in the present suit, affecting the jurisdiction of circuit courts to issue writs of mandamus to State officers.

It is apparent that the condition of which plaintiffs complained may be remedied by proper proceedings instituted under the drain code of 1956 (PA 1956, No 40, as amended [CLS 1956, § 280.1 *et seq.,* as amended (Stat Ann 1960 Rev § 11.1001 *et seq.*)]). The bill of complaint indicated that attempts had been made to interest the drain commissioner of Lenawee county in plaintiffs' problem,

but apparently no action was taken under the statute by proper petition to the commissioner to bring about the establishment of such drainage facilities as will obviate the condition of which plaintiffs complained. In other words, they were not without remedy except in a court of equity.

The circuit court properly dismissed plaintiffs' bill of complaint and the order entered is affirmed, but without costs, questions of a public nature being involved.

Dethmers, C. J., and Kelly and Kavanagh, JJ., concurred with Carr, J.

Black, J. (*dissenting*). In this case we divide 3 ways again. One wing of the Court, citing *Minarik* v. *State Highway Commissioner,* 336 Mich 209, pursues what Roscoe Pound has called "The Decadence of Equity" (5 Columbia L Rev 20) and votes to oust these plaintiffs from the halls of equity.[1] Another wing of the Court refers exclusively to *Penix* v. *City of St. Johns,* 354 Mich 259, 263 and stands for affirmance upon certain "reservations" pivoting around the controversial and presently irrelevant doctrine of governmental immunity (of *Penix,* more later). I stand for denial of defendant's motion to

[1] Consider again Pomeroy's fully proven premonition, written for preface nearly 80 years ago 1 Pomeroy's Equity Jurisprudence (5th ed), pp xxiv, xxv:

"There has not, of course, been any conscious intentional abrogation or rejection of equity on the part of the courts. The tendency, however, has plainly and steadily been towards the giving an undue prominence and superiority to purely legal rules, and the ignoring, forgetting, or suppression of equitable notions. The correctness of this conclusion cannot be questioned nor doubted; the consenting testimony of able lawyers who have practiced under both systems corroborates it; and no one can study the current series of State reports without perceiving and acknowledging its truth. In short, the principles, doctrines, and rules of equity are certainly disappearing from the municipal law of a large number of the States, and this deterioration will go on until it is checked either by a legislative enactment, or by a general revival of the study of equity throughout the ranks of the legal profession."

dismiss and for hearing, in necessary part at least, of the merits of the case such plaintiffs have pleaded.

It is unfortunate that we cannot, by majority vote in this case, order affirmance without filing of opinions, thus confessing disability of agreement upon any opinion of precedentary value. However, the Constitution having directed otherwise (Const 1908, art 7, § 7), the following opinion for reversal is recorded.

Turning first to *Minarik*. That case, noose-restrictive of equity and wholly unsupported by reasoning or authority, is another casually errant decision which—until thoughtful re-examination thereof is made by more than 1 or 2 judges—will continue to provide an easily abused instrument of official power. As the highway department proceeds to construct that which ultimately takes or adversely affects nearby private property, let those whose trust is placed in the apparent fairness of pending negotiations learn quickly that equity's jurisdictional door, theretofore graciously open for injunctive relief,[2] closes like a beartrap as soon as the departmental structure

---

[2] "As is said in *Cooper* v. *Alden*, Harr Ch (Mich) 72, 91, the court of chancery 'has undoubted jurisdiction to interfere, by injunction, where public officers are proceeding illegally or improperly, under a claim of right to do any act to the injury of the rights of others;' and it has been exercised in many cases, under a great variety of circumstances, and against State officers as well as those of inferior grade. *Palmer* v. *Rich*, 12 Mich 414; *Ryan* v. *Brown*, 18 Mich 196; *Kinyon* v. *Duchene*, 21 Mich 498; *Merrill* v. *Humphrey*, 24 Mich 170; *Clement* v. *Everest*, 29 Mich 19; *Bristol* v. *Johnson*, 34 Mich 123; *Marquette, H. & O. R. Co.* v. *City of Marquette*, 35 Mich 504; *Flint & P. M. R. Co.* v. *Auditor General*, 41 Mich 635; *Folkerts* v. *Power*, 42 Mich 283." *Upjohn* v. *Richland Township*, 46 Mich 542, 545.

"It has always been settled that the owner of realty is entitled to the aid of equity to prevent permanent and continually recurring injuries to the enjoyment of his property. To deprive him of such enjoyment is to deprive him of the property itself, wholly or to the extent of the mischief. Neither can it be allowable for wrongdoers to rely on their own wrong to change or lessen his means of redress. When they do mischief, it is their own fault if they render a stringent remedy necessary, and they, and not the party injured, must take the consequences. If the remedy is difficult, it is made so by their conduct." *Koopman* v. *Blodgett*, 70 Mich 610, 618, 619 (14 Am St Rep 527).

or structures are completed beyond effective restraint.

Yes it is true, *Minarik* applied as here, that Michigan courts of equity have no jurisdiction to *abate* what originally they might have *enjoined,* the suit being against a State officer. When that officer succeeds in getting his dam of natural flowage completed in or along the highway right-of-way, then in a quick wink of Michigan's jurisdictional eye the vestments of exemption—from the ordinary processes of equity—are cast upon him. Ecclesiastes[3] notwithstanding, the jurisdictional race is after all to the litigatory swift. Let, then, all heed this free advice: Head for the courthouse with a petition for injunction whenever that State officer so much as hints by word or act that his threatened or pending project may hinder or hurt the ordinary enjoyment of your property rights. Delay, even for a few days, may and probably will make mockery of equity's presumably faithful maxim, "never a wrong without a remedy."

*Minarik* twists and wrests, from a statute governing mandamus proceedings only,[4] legislative intent that courts of equity shall not issue mandatory injunctions against State officers. From there *Minarik* tortures equity's mandatory injunction into law's writ of mandamus, and concludes from such premises that equity has no jurisdiction, by decree for abatement or other decretal means of enforcement, to relieve the actually injured owner from a continuing trespass on his property by the State highway department.

To hold thus is to sanction, in a court of equity at that, the taking of private property without pay-

---

[3] 9:11.—Reporter.
[4] "No circuit court shall have jurisdiction to issue a writ of mandamus against any State officer." CL 1948, § 636.3 (Stat Ann § 27.2230).

ment of just compensation. That the defendant commissioner's act is, on the face of this dismissed bill, just such taking is attested by *Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich 308, 321:

"That the flowing of lands against the owner's consent, and without compensation, is a taking of his property in violation of that provision of our Constitution, and that of most of all the American States, which prohibits the taking of property without compensation, is a proposition which seems to me so self-evident as hardly to admit of illustration by any example which can be made clearer, and which therefore can hardly need the support of authorities."

When courts of equity by final decree order the abatement of a continuing trespass or the abatement of a nuisance, they do not thereby issue mandatory injunctions, much less writs of mandamus. The mandatory injunction is an *interlocutory* instrument which is temporarily directed to the offending party in rare cases; whereas the decree of abatement may or may not order the defendant to take affirmative action "and is in no proper sense an injunction of any kind."[5] Such a decree adjudicates the plaintiff's right to relief and may employ the limitless instrumentalities of equity to constrain her will including, in a proper case (say where the decree cannot for some reason be enforced by order directed to the defendant *in personam*), an order authorizing the plaintiff or some officer of the court to enter upon

[5] Pomeroy, starting his topic "Mandatory Injunctions", tells us: "This term, in strictness, is confined to interlocutory or preliminary injunctions. Where, on the final hearing in a case of nuisance, or interference with easements, or continued trespass analogous to nuisance, the relief is granted compelling the defendant to remove his obstructions or erections, and to restore the plaintiff to his original condition, and thereby to end the wrong, *the remedy is in fact an ordinary decree for an abatement, and is in no proper sense an injunction of any kind.*" 4 Pomeroy's Equity Jurisprudence (5th ed), § 1359, p 970.

the defendant's property for the purpose of removing obstructions and restoring original conditions.

To say that this decretal practice, known as it is only to equity, is barred by a statute which exclusively limits issuance of the common-law writ of mandamus, is to distort simple words, simply expressed and simply purposed. Mandamus is "essentially and exclusively a common-law remedy unknown to the equity practice" (55 CJS, Mandamus, § 2, p 17). We must assume that the legislature, in enactment of the "judicature act of 1915," regarded the remedy accordingly. No doubt on that score is left when the act as a whole is carefully considered.

It will be noted that the restriction in question, against issuance of writs of mandamus in circuit, appeared then and appears now in separate chapters of the act (CL 1948, §§ 606.1, 636.3 [Stat Ann §§ 27.542, 27.2230]). It will be noted, too, that the chapter 6 restriction appears in section 1, relating exclusively to the jurisdiction of circuit courts proper, and that nothing like it—even by strained inference—appears in subsequent section 4 (CL 1948, § 606.4 [Stat Ann 1959 Cum Supp § 27.545]). The latter is the general grant·of jurisdiction and authority to our "circuit courts in chancery." Added to all this we find no restriction, anywhere in the act, of equity's historic power of abatement, whether the iniquitous defendant be a State officer or otherwise. So much for the question of legislative intent.

Let us test *Minarik's* anomaly further. I assume from their writing that my veteran Brothers would affirm the jurisdiction of equity had these plaintiffs moved immediately for injunctive aid when the highway commissioner started work on highway US–223 adjacent to their farm. But suppose, as will sometimes occur in the best regulated of judicial families, that the chancellor in such instance should fail to enjoin *pendente* until it becomes too late for

restraint distinguished from abatement. Would it not follow from the reasoning of my Brothers that equity's jurisdiction over the case, already firmly attached, is automatically excised when the State officer's previously restrainable act becomes *"accompli"*? Is the jurisdiction thus not subject to severance by acts beyond control of a plaintiff who, rightfully and on time, has entered equity's portals? My short answer is that *Minarik* offends equity without shred of warrant.

Each step, taken through the years toward encystment of equity jurisdiction, inexorably forces another in the same direction. Compare *Minarik* again. There the plaintiffs received—at least—the benefit of judicial consideration of "considerable testimony" taken at hearing of the highway commissioner's motion to dismiss, and so this Court was able to fortify its decree (p 212) with a finding of inability "to determine where the real cause for the flooding lies." Here no testimony was taken, and here there is no like opportunity for appraisal of the general equity of the case. So *Minarik*, with its testimony and consideration of testimony, becomes authority for dismissal where no testimony has been taken or considered. · Such is the error of compounded error. I will have no part therein.

There may, indeed, be a mandamusable duty to perform, yet in equity that duty may be unenforceable. On the other hand, equity may find good reason for compulsion when the seeker of mandamus would meet with purely legal and altogether valid obstacles. One proceeding is not to be confused with the other, and no statute barring issuance of "a writ of mandamus against any State officer" may properly be read as a restriction of equity's historic jurisdiction. I say, then, that if the legislature wishes the State highway commissioner immunized in equity from the otherwise abatable consequences of any tort or un-

lawful appropriation he may commit in the course of his work, doubtless the legislature will say so. Until then we should refrain from that which really is "judicial legislation."

The fundamental error here is that of determining jurisdiction from the prayer for relief rather than the charging part of plaintiffs' bill. As we said in *Herpolsheimer* v. *A. B. Herpolsheimer Realty Co.,* 344 Mich 657, 665, 666 (followed on this point in *Carlson* v. *Williams,* 348 Mich 165, 168):

"The premises of a bill in equity—not its prayer —are determinative of the substance thereof (*Berg* v. *Berg,* 336 Mich 284; *McCoy* v. *Continental Insurance Co.,* 326 Mich 261; *Ranian* v. *Pokorney,* 198 Mich 567; 30 CJS, Equity, § 210, p 667), and this is but another way of saying that relief within scope of the bill is the final responsibility of the chancellor and that the prayer aids rather than dictates equity's decretal beneficence."

No one knows what, if any, relief the chancellor might grant upon this bill should the case go to hearing on the merits. That would be up to him, depending on the showing made and judicial determination of the best way to accomplish equity's constant and ultimate aim. We do know that these plaintiffs as against defendant's motion to dismiss have stated a case cognizable in equity and that a decree of abatement is neither a writ of mandamus nor a mandatory injunction. So ends, or should end, today's inquiry.

My elder Brothers hold that the conditions of which these plaintiffs complain may be remedied by proceedings under the drain code. Just how such conclusion may be drawn from the face of this taken-as-true bill of complaint is not explained. Do my Brothers know something about the surface conditions in this particular part of Lenawee county's

Palmyra township—not shown in this record—which would justify a proceeding under the drain law? No matter what a hearing of the merits might establish, it is clear that they are determined presently to relieve the highway fund from the consequences of a trespass we under this bill must assume the highway department has committed and continues to commit against these plaintiffs. Property taxation of such plaintiffs (and others "benefited"). is to shoulder the corrective burden if it is to be shouldered at all. Yes, proceeding on and beyond *Minarik,* let us turn these plaintiffs from equity's door without so much as having taken a half-hour's testimony to ascertain whether they are or are not entitled to some relief on account of their held-for-true charges.

I would overrule *Minarik* and reverse the present order with remand for hearing of the merits and entry of such decree as equity may be advised—when she is fully and properly advised. As for *Penix* it need only be said that no statute stood before us, in that *law* case, for determination of its applicability or inapplicability. All members of the Court agreed that, for want of allegation of a proprietary function out of which the plaintiff's claim for compensatory damages arose, the defendant municipality was by extant bench law definitely immune from liability to such plaintiff. Here we have an exclusive question of equity jurisdiction to abate what on the face of plaintiffs' bill is a continuing trespass. *Penix* grew in another field, the natural sod of which cannot be turned judicially until and unless a 5-furrow gang plow is hammered out in our quarters.

Edwards, J. (*concurring*). We concur with the result reached by Mr. Justice Carr in affirming the circuit judge's dismissal of plaintiffs' bill of complaint, with the reservations expressed in the con-

curring opinion in *Penix* v. *City of St. Johns*, 354 Mich 259, 263.

SMITH and SOURIS, JJ., concurred with EDWARDS, J.