BALES v STATE HIGHWAY COMMISSION

1. EMINENT DOMAIN—RESTRICTIVE COVENANTS—EASEMENTS—NEGA-
   TIVE RECIPROCAL EASEMENTS—CONSTITUTIONAL LAW—DUE
   PROCESS—COMPENSATION—VALIDITY—CHARACTER OF PARTIES.

   Restrictive covenants are valuable property rights, treated as
   easements at law; negative reciprocal easements cannot be
   taken for public use without due process of law and compensa-
   tion, and their validity is not affected by the character of the
   parties in interest (Const 1963, art 10, § 2).

2. INJUNCTION—EQUITY—EMINENT DOMAIN—LEGAL METHODS.

   Equity will enjoin parties empowered with the right to employ
   eminent domain who assert the right to take or damage prop-
   erty or property rights but ignore the legal method.

3. EMINENT DOMAIN—PREJUDICE—DELAY—DUE PROCESS RIGHTS.

   Any possible injury to government authority exercising a right of
   eminent domain which may occur through delay caused by
   requiring the authority to follow the prescribed legal process
   for exercising that right is subservient to the involved property
   owner's constitutionally created right.

4. MANDAMUS—INJUNCTION—STATE OFFICERS—AFFIRMATIVE ACTS.

   No litigant can mandamus a state officer by using the term
   injunction instead of mandamus when it is the latter remedy
   he seeks; however, a complaint which requests that a state
   officer be restrained from completing a project in violation of
   the plaintiffs' rights is cognizable as a claim for injunctive
   relief in a circuit court where the complaint does not request
   an affirmative act of the officer.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 165 *et seq.*
[2, 3, 5] 27 Am Jur 2d, Eminent Domain § 485.
   Injunction against exercise of power of eminent domain. 93 ALR2d
   465.
[4] 27 Am Jur 2d, Eminent Domain § 491.
   Mandamus to compel ascertainment of compensation for property
   taken or for injuries inflicted under the power of eminent do-
   main. 91 ALR2d 991.

5. INJUNCTION—EMINENT DOMAIN—EASEMENTS—CONSTITUTIONAL
    LAW—TAKING—DESTRUCTION.

> An injunction to restrain the destruction of easements without
> compensation first being made is proper where there is clearly
> an attempted unconstitutional taking and the taking has not
> yet occurred.

Appeal from Wayne, William Leo Cahalan, J. Submitted June 14, 1976, at Detroit. (Docket No. 26273.) Decided October 20, 1976.

Complaint by Edward E. Bales and others, for themselves and for others similarly situated, against the State Highway Commission for an injunction barring the use of real property in violation of residential deed restrictions. Summary judgment for plaintiffs. Defendant appeals. Affirmed.

*Travis, Warren, Nayer & Burgoyne* (by *Bert Burgoyne* and *John M. Roche),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso,* Assistant Attorney General, and *James Meija,* Assistant Attorney General, for defendant.

Before: V. J. BRENNAN, P. J., and N. J. KAUFMAN and R. H. CAMPBELL,* JJ.

N. J. KAUFMAN, J. Plaintiffs, the owners of residential lots in Lakepointe Village Subdivision #1 in Plymouth Township, brought this class action in Wayne County Circuit Court seeking to enjoin the defendant State Highway Commission from carrying out plans to construct Highway M-14. From the trial court's resolution in favor of plain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tiffs by way of summary judgment, defendant appeals.

In 1974, defendant began acquisition of property for M-14. It was contemplated that the completed project would encompass a 5.8-mile segment of highway in western Wayne County. The project was designed to provide a limited access connecter between I-275 and I-96 on the east and US-23 on the west. In order to build this project, ten residential lots in the Lakepointe Village Subdivision were acquired by voluntary purchase agreements, and the lot owners, who are not parties to the instant case, were fully compensated.

Plaintiffs responded to defendant's acquisition by instituting the present action. In their complaint, plaintiffs asked that the trial court issue an injunction against defendant, because the proposed use of the purchased lots violated valid residential deed restrictions limiting the use of the lots to single family dwellings. Moreover, plaintiffs justified the issuance of the injunction on the grounds that the defendant had a constitutional obligation to first acquire their heretofore-described deed restriction rights by eminent domain proceedings or voluntary purchase agreements.

Plaintiffs obtained their requested relief when the trial court, in granting plaintiffs' motion for summary judgment, restrained defendant from "constructing any highway improvements in any portion of the subject subdivision until defendant had acquired either by purchase or commencement of condemnation proceedings plaintiffs' property rights".

To overturn the trial court's decision, defendant has advanced numerous questions for appellate review. Initially, defendant sets forth a twofold attack on the propriety of injunctive relief in the

instant factual situation. First, defendant stresses that the plaintiffs had an adequate remedy at law to protect their respective property rights by bringing damage actions in the court of claims. Secondly, defendant urges that the trial court ignored the disproportionate injury to the defendant as a result of the issuance of the injunction. This is so here, defendant tells us, because of the severe economic consequences which will befall the people of this state by the maintenance of this injunction.

It is a settled principle that we review equity matters *de novo. Wabeke v City of Holland,* 54 Mich App 215; 220 NW2d 756 (1974), *lv den,* 393 Mich 772 (1974). Considering the first attack on the injunction, we find the defendant's position erroneous.

It is needless to review the consistency with which the courts of this state have repeatedly held that restrictive covenants are valuable property rights, treated as easements at law.[1] In keeping therewith, negative reciprocal easements "cannot be taken for the public use without due process of law and compensation therefor, the validity of such restriction not being affected by the character of the parties in interest". *Allen v Detroit,* 167 Mich 464, 473; 133 NW 317 (1911). Thus, they are property rights within the umbrage of Const 1963, art 10, § 2, which provides that "private property shall not be taken for public use without just compensation therefor being *first* made or secured in a manner prescribed by law". (Emphasis supplied.) Yet, in spite of the foregoing, defendant

[1] *See Johnstone v Detroit, G H & M R Co,* 245 Mich 65; 222 NW 325 (1928), *In re Petition of Dillman,* 263 Mich 542; 248 NW 894 (1933), *Sipes v McGhee,* 316 Mich 614; 25 NW2d 638 (1947), *rev'd other grounds* 334 US 1; 68 S Ct 836; 92 L Ed 1161 (1947), *Allen v Wayne Circuit Judge,* 159 Mich 612; 124 NW 581 (1910).

vigorously asserts that plaintiff was barred from suit by an adequate damage remedy in the Court of Claims *after* the taking occurs.

In rejecting defendant's contention, we are not unmindful of the judicial disposition to foreclose injunctive relief where a full and adequate remedy exists at law. See *O'Melia v Berghoff Brewing Corp,* 304 Mich 471; 8 NW2d 141 (1943), *Van Buren School Dist v Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975). But a Michigan court has never determined that this broadly stated principle is applicable to the question before this Court. It appears that defendant, in essence, is contending that a constitutionally created right cannot be protected from infringement in equity but, instead, the aggrieved party must seek relief after the violation has occurred by way of a damage remedy.

In addressing this argument, we refer to the language of Mr. Justice WIEST in *Dunnebacke v Detroit, G H & M R Co,* 248 Mich 450, 456; 227 NW 811 (1929), as particularly instructive:

> "If, instead of composing or satisfying plaintiffs' easement rights by condemnation, the defendants asserted intention to go ahead and destroy or injure such rights and remit plaintiffs to actions at law to obtain redress, then a clear instance for interposition of a court of equity and its restraining power exists. Equity will enjoin parties, empowered with right to employ eminent domain, who assert the right to take or damage property or property rights but ignore the legal method. Upon this, authority is ample." [Citations omitted.]

We are persuaded that this view is controlling; hence, we reject defendant's contention.

Nor can we agree with defendant's second claim of error. Defendant has raised the specter of crip-

pling ramifications to the Detroit area economy because approximately 3,400 people will be out of work until the defendant acquires the property rights. Furthermore, defendant informs us that the whole state may suffer irreparable injury because continuance of the injunction raises the possibility that close to 20 million dollars in Federal funds will be lost.

On the other hand, plaintiffs point out that under the "quick take" condemnation statute defendant could have already acquired the property rights. MCLA 213.361; MSA 8.261(1). We agree. This would allow the project to move speedily forward without any of the ensuing calamitous consequences defendant portends. Again, we must add that any possible injury to defendant is subservient to plaintiffs' aforesaid constitutionally created right.

Next, defendant argues that the plaintiffs' complaint is a slightly veiled attempt to compel the Michigan State Highway Commission to institute eminent domain proceedings. Thus, defendant concludes, plaintiffs in reality are seeking a writ of mandamus against a state agency cognizable only in this Court. GCR 1963, 714.1(1). For this proposition, defendant relies principally on *Burch v State Highway Commission,* 362 Mich 488; 107 NW2d 791 (1961), and *Minarik v State Highway Commissioner,* 336 Mich 209; 57 NW2d 501 (1953).

Coming directly to the problem before us, we agree that it has been held that "[n]o litigant can mandamus a state officer * * * by using the term injunction instead of mandamus when it is the latter remedy he seeks". *Minarik, supra,* 213. It is therefore necessary to examine the facts and weigh the circumstances of the instant case to determine whether the remedy sought comes

within the purview of the rule set forth in *Burch* and *Minarik.* We think it clear that these cases are not germane to the instant factual situation.

Conspicuously absent in the present case is any suggestion, in contrast to both *Burch* and *Minarik,* requiring the defendant to restore the subdivision to its original condition before the defendant started the project, *i.e.,* do an affirmative act. Instead, the injunction merely requires defendant to refrain from completing the project in violation of plaintiffs' hereinbefore stated constitutional right. Thus, the case is analogous to *Hunt v State Highway Commissioner,* 350 Mich 309; 86 NW2d 345 (1957), and the circuit court did not lack jurisdiction. See also *Calcatera v Civil Service Commission,* 52 Mich App 27; 216 NW2d 613 (1974).

Lastly, defendant forcefully argues that since the ultimate goal of the plaintiffs is to force the defendant to pay compensation for their property rights by the commencement of eminent domain proceedings, their complaint is thus a bold attempt to circumvent the Court of Claims Act, MCLA 600.6401; MSA 27A.6401, and the exclusive jurisdiction of the Court of Claims established therein. To buttress this contention, defendant directs our attention to *Hill v State Highway Commission,* 382 Mich 398; 170 NW2d 18 (1969).

In *Hill,* the plaintiffs sought a writ of mandamus commanding the State Highway Commission to institute an action to ascertain the damages to plaintiffs' property as a result of the establishment and construction of the I-94 expressway. At the time the writ was sought, construction of the highway had already been completed. Simply stated, the Supreme Court found mandamus an inappropriate remedy. Their reasoning in reaching

this result is illuminating in relation to the present case: .

"We do not base our decision herein so much upon the adequacy of plaintiffs' remedy in the court of claims as we do upon the tenuousness of the claims themselves. In a case in which there was a clear fact situation of an unconstitutional taking of private property, the argument of an adequate remedy in the court of claims might not prevail. Here, however, no actual physical taking of any portion of plaintiffs' property is pled or shown." *Hill, supra,* 404.

We will start our examination of this issue with fundamentals. Of course, as noted earlier, in the instant case we are dealing with a clear factual situation of an attempted unconstitutional taking of private property without prior compensation being paid. All agree that the destruction of easements, such as in this case, is the taking of private property for public purposes. So if anything is plain, we are not presented with a situation embraced within the rule of *Hill* dealing with "tenuous" claims.

From this alone we must necessarily conclude that *Hill* is inapposite to the instant case. But there is more. In granting the summary judgment to plaintiffs, the trial judge specifically found that the property rights were not yet taken but, rather, an injunction was necessary to prohibit the taking without compensation being first made or secured in a manner prescribed by law. This differs substantially from *Hill* where the alleged taking had already occurred. We find these distinguishing factors controlling and therefore find an injunction an appropriate method of securing plaintiffs' constitutional right.

Affirmed. No costs, a public question involved.